**Richard E. BANKER, Plaintiff–Counter–Defendant–Appellant–Cross–Appellee,**

**v.**

**NIGHSWANDER, MARTIN & MITCHELL, Defendant–Counter–Claimant–Appellee–Cross–Appellant.**

**Nos. 1777, 1888, Dockets 93–9292, 93–9338.**

United States Court of Appeals, Second Circuit.

Argued June 13, 1994.

Decided Oct. 11, 1994.

W.E. Whittington IV, Norwich, VT (Douglas S. Moore, Brooks McNally Whittington Platto & Vitt, of counsel), for plaintiff-appellant-cross-appellee Richard E. Banker.

Charles J. Dunn, Manchester, NH (Wadleigh, Starr, Peters, Dunn & Chiesa, of counsel), for defendant-appellee-cross-appellant Nighswander, Martin & Mitchell.

Before: McLAUGHLIN, JACOBS, Circuit Judges, and WEINSTEIN, Senior District Judge.*

JACOBS, Circuit Judge:

This case of legal malpractice arises from the retention of the New Hampshire law firm of Nighswander, Martin & Mitchell ("Nighswander") to advise and represent Richard E. Banker in his effort to collect a debt evidenced by a promissory note. In the underlying collection case, the United States District Court for the District of New Hampshire granted summary judgment to the debtors, leaving Banker unable to collect on the note. Banker subsequently brought this lawsuit in the United States District Court for the District of Vermont, alleging that Nighswander's advice concerning collection on the note amounted to legal malpractice, and demanding $350,000 in damages. After a four-day bench trial, the Vermont district court (Billings, J.) found that Nighswander had committed malpractice. The district court further found, however, that Banker failed to mitigate his damages by not prosecuting an appeal of the adverse judgment in the underlying collection suit. The district court therefore declined to award as damages the full amount due on the note, and instead entered judgment for $50,000.

Banker appeals the district court's judgment fixing the damage award at $50,000, a figure that apparently reflects the court's finding that Banker failed to mitigate damages; and the court's refusal to award Banker attorney's fees incurred by him in the malpractice action. Nighswander cross-appeals the district court's liability finding.

We find no error in the district court's finding of legal malpractice or the refusal to award attorney's fees. We vacate the judgment, however, and remand for findings concerning causation and for recalculation of damages in a manner consistent with this opinion.

## Background

Banker sold his 100 percent ownership of Quality Mechanical, Inc. to Upper Valley Refrigeration Co., Inc. ("Upper Valley"), in two stock sale transactions: 50 percent in July 1986, and the remaining 50 percent in December 1987. Upper Valley was a New Hampshire corporation solely owned by Car-

---

* The Honorable Jack B. Weinstein, of the United States District Court for the Eastern District of New York, sitting by designation.

ol and Wilton Buskey. At the closing of the second stock transaction, Banker accepted a promissory note in the principal amount of $260,000, executed by Upper Valley and Quality Mechanical, as well as by the Buskeys individually. This promissory note was secured by the stock of Upper Valley and Quality Mechanical, the shares of which were placed in escrow with Banker's attorney, Albert J. Cirone.

When payments on the note ceased after April 1989, the principal amount due on default was $229,264.38. Banker's lawyer, Mr. Cirone, was then of counsel to the Nighswander firm. Banker retained the firm in May 1989, and Mr. Cirone sent a letter in June demanding payment from the makers of the note. That same month, Banker filed suit in New Hampshire state court to collect on the note and (more immediately) to attach the property of the Buskeys and the two corporations. In July 1989, the Buskeys removed the suit to federal court in New Hampshire.

Banker soon began to hear news suggesting that the debtors might be in financial straits: the corporations were not paying their suppliers, and the Buskeys were in the midst of an embittered divorce. Acting on the advice of his attorneys at Nighswander, an alarmed Banker repossessed the stock of Upper Valley and Quality Mechanical on October 19, 1989. For several months thereafter, the parties conducted settlement negotiations that resulted in an undertaking by the Buskeys to pay a sum certain on January 2, 1990. That date came and went without payment. On January 15, 1990, Banker voted himself president and sole director of both corporations. According to the Nighswander brief, the entire purpose of these steps was to secure accurate financial information about the debtors.

Later that month, Upper Valley's bank swept the accounts of Upper Valley, seizing $81,000, and prompting Banker to file a petition for reorganization of Upper Valley under Chapter 11 of the United States Bankruptcy Code. In March 1990, the corporation was forced into liquidation under Chapter 7 of the Bankruptcy Code.

In July 1990, Wilton Buskey filed a supplemental affirmative defense in the note collection case, alleging that the exercise of Banker's right to take possession of the escrowed stock and his exercise of control over the two corporations constituted an involuntary strict foreclosure under Article 9, Section 505(2) of the Uniform Commercial Code. *See* N.H.Rev.St.Ann. § 382–A:9–505(2). The Buskeys then filed a motion for summary judgment on that issue, arguing that Banker thereby relinquished any remedy against them or their personal assets. Summary judgment in favor of the Buskeys was granted on January 10, 1991. *Banker v. Upper Valley Refrigeration*, 771 F.Supp. 6 (D.N.H. 1991).

Educated by the summary judgment opinion, Banker retained new counsel to pursue a claim that Nighswander committed malpractice in failing to advise Banker about the risks of repossessing the stock. Banker's new counsel, the firm of Teachout, Brooks & McNally (now Brooks McNally Whittington Platto & Vitt), notified the Nighswander firm of this malpractice claim on January 20, 1992, and at the same time conveyed Banker's direction that Nighswander pursue an appeal of the New Hampshire decision on Banker's behalf. Nighswander, however, decided to cut its ties with its unhappy client, and filed a motion in the New Hampshire federal court to withdraw as counsel. At the hearing on the motion, Banker opposed Nighswander's withdrawal. In granting the motion, the New Hampshire court expressed its view that Banker's new counsel could represent Banker in an appeal to the First Circuit.

On June 22, 1992, Banker filed his complaint in this lawsuit in Vermont federal court. On November 15, 1993, Judge Billings entered his decision and order, finding that Nighswander committed malpractice by negligently rendering advice. Specifically, the court found that Nighswander was negligent in researching collection alternatives, and in failing to learn—and tell its client— the risks of involuntary strict foreclosure. However, the court also held that Banker failed to mitigate his damages by failing to appeal the New Hampshire decision. Apparently for that reason, the court awarded Banker $50,000 in damages rather than the

considerably larger sum due on the note. This appeal followed.

## Discussion

### Standard of Review

 Following a bench trial, an appellate court may only set aside those findings of fact that are clearly erroneous, with due regard given to the district court's credibility determinations. Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Under this standard, we will not upset a factual finding unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. $10,000 in United States Currency,* 780 F.2d 213, 220 (2d Cir.1986) (citing *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949)). However, the district court's application of those facts to draw conclusions of law, including a finding of liability, is subject to *de novo* review. *A/S Dampskibsselskabet Torm v. Beaumont Oil Ltd.,* 927 F.2d 713, 716 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 183, 116 L.Ed.2d 144 (1991). This standard is equally applicable to the so-called mixed question of law and fact. *Bose Corp. v. Consumers Union,* 466 U.S. 485, 501, 104 S.Ct. 1949, 1959, 80 L.Ed.2d 502 (1984).

### Malpractice Liability

We first consider the potentially dispositive issue presented in the cross-appeal. Nighswander argues that the district court's finding of liability for legal malpractice is without support in the evidence. We disagree.

In October 1989, Banker took possession of the stock certificates that had been stored in Cirone's safe and recorded his name on them, thereby becoming the sole shareholder of the corporations. On January 15, 1990, after an unsuccessful attempt to settle the dispute, Banker removed the Buskeys as directors and appointed himself director, president, and treasurer. He then assumed day-to-day control of the corporations, eventually taking Upper Valley (the "parent" corporation) into a liquidation proceeding under chapter 7 of the Bankruptcy Code. 11 U.S.C. §§ 701–766. In doing all this, Banker acted on the advice of Nighswander.

The New Hampshire district court held that Banker's conduct in taking possession of the stock and exercising control of the corporations constituted an "involuntary strict foreclosure" under section 9–505 of the U.C.C. *Banker v. Upper Valley Refrigeration Co.,* 771 F.Supp. 6, 11 (D.N.H.1991). That section of the U.C.C. provides that a creditor may "retain the collateral in satisfaction of his obligation." N.H.Rev.Stat.Ann. § 382–A:9–505. In its opinion, the New Hampshire district court relied upon a First Circuit case that was issued after Nighswander gave Banker the advice now in question. *See Lamp Fair, Inc. v. Perez–Ortiz,* 888 F.2d 173 (1st Cir.1989). In *Lamp Fair,* the First Circuit predicted that Connecticut courts interpreting this section of that state's commercial code would hold that, when a creditor takes possession of collateral securing a debt—without evidencing an intent to preserve it for later judicial disposition or for sale in a "public or private" proceeding—the creditor is deemed to have made an election to retain the collateral in full satisfaction of the underlying obligation. *Lamp Fair,* 888 F.2d at 176–78 (collecting cases). The First Circuit analyzed the question under both a majority and a minority view. Under the majority viewpoint, the secured creditor is deemed to have made an election to take the collateral in lieu of any further recourse. Under the minority view no such election occurs, but the creditor nevertheless loses recourse unless it complies with the procedural requirements of U.C.C. § 9–504, which includes an attempt to dispose of the collateral at a public or private sale. Thus, the *Lamp Fair* court concluded—with facts almost identical to those of this case—under either view, the creditor forgoes the opportunity to pursue a default judgment. *Id.* at 178. The New Hampshire district court reviewed what Banker had done with the stock and with corporate control, considered those

facts in light of the *Lamp Fair* decision, and deemed Banker to have forgone any recourse against the Buskeys. 771 F.Supp. at 11. The court accordingly granted summary judgment to the Buskeys, thereby leaving Banker no source of payment other than the assets of the two insolvent corporations.

A claim for attorney malpractice, being either in the nature of a tort or a contract action, is a matter of state substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In a diversity case, a federal court applies the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). For purposes of this appeal, it does not matter whether Vermont treats lawyer malpractice as a tort or as breach of contract: New Hampshire law will apply in either event. *See, e.g., Pioneer Credit Corp. v. Carden*, 127 Vt. 229, 245 A.2d 891, 894 (1968) (in contract action, place of making and place of performance entitled to substantial weight in choosing applicable law); *O'Brien v. Comstock Foods, Inc.*, 123 Vt. 461, 194 A.2d 568, 571 (1963) (in tort action, place of final harm controls choice of law).

Under New Hampshire law, a "malpractice plaintiff's burden in proving liability is … essentially the same as any negligence plaintiff's burden to prove facts upon which the law imposes a duty of care, breach of that duty, and so-called proximate causation of harm." *North Bay Council, Inc., Boy Scouts of America v. Bruckner*, 131 N.H. 538, 563 A.2d 428, 430 (1989). It is undisputed that an attorney-client relationship existed between Nighswander and Banker, and that relationship gave rise to a duty on Nighswander's part "to exercise reasonable care and ordinary skill and knowledge in providing the legal services agreed upon." *Id.* 563 A.2d at 431 (citation omitted).

In the present litigation, the Vermont district court found that the Nighswander lawyer assigned to research Banker's rights under Article 9 of the U.C.C. produced a three-page memorandum that failed to consider any risk associated with taking possession of the securities. Nobody advised Banker that he might be able to avoid the strict foreclosure problem through a reasonable commercial sale of the collateral, pursuant to § 9–504 of the U.C.C. No other attorney at the firm looked into this matter at all until the Buskeys raised the issue as an affirmative defense in the collection action, at which time one Nighswander lawyer confided in a letter to Banker that this defense was "a mystery" to him.

Nighswander argues that Banker's expert on malpractice lacked the necessary background or foundation to testify that the firm's conduct subjected its client to a substantial risk and fell below professional standards prevailing in the jurisdiction. Moreover, Nighswander contends that its own experts testified that the risk presented by the firm's advice was "so slight as to be negligible," because (at the time the advice was given) no New Hampshire decision had indicated that repossession of stock would be deemed strict foreclosure, and the First Circuit had not issued its opinion in *Lamp Fair*. The *Lamp Fair* court noted, however, that (a) a majority of the courts had held that such conduct constituted an involuntary strict foreclosure, and (b) even under the minority view, taking possession of the collateral without attempting to dispose of it bars a subsequent default judgment for the balance due. 888 F.2d at 175–77. Had Nighswander researched the issue, it would (or should) have appreciated that its strategy entailed a risk that was fatal, easily avoidable, and considerably more than "negligible." It was this failure to consider the risk, and to apprise its client of it, that constituted Nighswander's negligence. In the battle of the experts, the district court accepted the testimony of Banker's expert over that of Nighswander's. This was a factual determination, and was not clearly erroneous.

We are unable to affirm liability, however, because there is no finding or conclusion as to one of the elements of a lawyer malpractice claim: proximate cause. *North Bay Council*, 563 A.2d at 430. In this case, any award of damages necessarily assumes that, if Banker had been fully apprised of the risks, (a) he would not have repossessed the

stock, and (b) he would have been able to collect some or all of the note proceeds from the Buskeys. But there is no finding that the Buskeys had assets other than the two corporations seized by Banker. Nor is there a finding as to the value of the stock at the time of repossession. In short, there is no finding that Banker would have recovered one dollar more if Nighswander had discovered the risks of seizing the collateral, and advised Banker of that risk.

On remand, therefore, we direct the district court to enter findings and conclusions as to proximate cause.

**Damages**

■■■■ The findings of fact disclose no basis for fixing damages at $50,000. When pressed on this issue at oral argument, counsel for Nighswander explained that Banker had at some point agreed to settle the collection matter with the Buskeys for $45,000. The idea that the $50,000 award represents the $45,000 settlement, plus some unspecified adjustment, insufficiently accounts for the judgment. In any event, there cannot be any reliance on the $45,000 settlement (unless the settlement formed a new contract, which no one apparently contends) by virtue of Rule 408 of the Federal Rules of Evidence, which bars the introduction of a settlement offer for the purpose of proving the amount of a liability. No other explanation for the $50,000 award is apparent from the record, and therefore we lack the findings necessary to affirm the damage award. On remand, we direct the district court to set forth the findings and conclusions necessary to assure both the parties and a reviewing court that the damage award has been calculated with a reasonable degree of certainty. *See Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir.1992) (plaintiff "must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages"); *Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 84–85 (2d Cir.1982) (same).

**Mitigation of Damages**

The district court's opinion recites that Banker's failure to appeal the New Hampshire decision constituted a failure to mitigate his damages. Since that factor potentially influenced the damage award, we address this conclusion, with which we disagree.

"The law requires reasonable efforts by a plaintiff to curtail his losses." *Emery v. Caledonia Sand & Gravel Co.*, 117 N.H. 441, 374 A.2d 929, 934 (1977) (citations omitted). This general rule will bar a plaintiff from recovering "damages for harm that could have been avoided through reasonable efforts or expenditures." *Flanagan v. Prudhomme*, 644 A.2d 51, 61 (N.H.1994) (citations omitted). The New Hampshire Supreme Court has construed this duty to mean that a plaintiff will not recover damages which "could have been 'avoided by reasonable effort without undue risk, expense, or humiliation.'" *Emery*, 374 A.2d at 934 (quoting Restatement, Contracts, § 336(1) (1932)).

Did the duty to mitigate damages require Banker to appeal the decision of the New Hampshire district court? New Hampshire courts are silent on this question; the facts presented, however, do not require us to surmise any general principle of New Hampshire law.

■■■■ Courts cannot require a litigant to press an appeal from a decision that the litigant believes to be correct. By the same token, a lawyer cannot be expected to stipulate to malpractice in the wake of a trial court decision that embarrasses the lawyer's advice. Whatever complications might ensue from this impasse, and however the Supreme Court of New Hampshire might resolve it, the circumstances here offer a simple resolution, because Banker and his new counsel pursued a ruthless policy of good faith: Banker gave Nighswander notice of the malpractice claim, and at the same time agreed to pursue an appeal of the collection suit if Nighswander would prosecute it under the existing contingency fee arrangement; when Nighswander declined that opportunity, Banker looked (unsuccessfully) for appellate counsel willing to accept a contingency fee. Nighswander is therefore compelled to argue that Banker's duty to mitigate damages required Banker to either (a) pay hourly rates to yet another lawyer to pursue an appeal

that Banker deemed fruitless; or (b) enlist his malpractice counsel to argue the appeal. Neither of these choices falls within the duty to mitigate damages.

As to the first choice, it is unreasonable to require a plaintiff to expend funds to pay an hourly rate to an attorney to take an appeal that the plaintiff believes to be without merit. That option cannot be described as an effort free of "undue risk, expense, or humiliation." *Emery*, 374 A.2d at 934. Banker's unwillingness to finance the appeal cannot constitute a failure to mitigate his damages.

As to the second choice, both the New Hampshire and Vermont district courts expressed the view that Banker's new lawyer could prosecute the appeal. Notwithstanding these findings, Banker's lawyer in the malpractice claim would have risked an issue conflict if he had pursued the New Hampshire appeal. He had already been retained to pursue a malpractice action against Nighswander—a claim that could succeed only if the New Hampshire decision was either correct or predictable. The district court in New Hampshire suggested that Banker's new counsel could have taken the appeal first, and then (if he lost in the First Circuit) pursued the malpractice action in Vermont. That course, however, would call upon a lawyer to champion Nighswander's advice in one jurisdiction before arguing (across the state line) that Nighswander's advice was erroneous and negligent. That course would also render the lawyer vulnerable to the charge that the appeal was half-hearted, particularly if by the time of the appeal, Nighswander had deeper pockets than the Buskeys. In any event, Nighswander, which contends that the appeal was meritorious, declined to pursue it; under that circumstance, Nighswander cannot condemn the decision by Banker and his new counsel to forgo an appeal they deemed meritless.

### Attorney's Fees

Banker appeals the district court's refusal to grant him attorney's fees, arguing that malpractice cases are "an established exception" to the American rule that leaves each party to pay its own legal fees. We disagree.

"State law creates the substantive right to attorney's fees. . . ." *Riordan v. Nationwide Mutual Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir.1992) (citing *Chamber v. NASCO, Inc.*, 501 U.S. 32, 50–53, 111 S.Ct. 2123, 2136–37, 115 L.Ed.2d 27 (1991)). Thus we apply the law of New Hampshire, which "still adheres to the rule that attorney's fees are not awarded except in limited circumstances." *Scheele v. Village District of Eidelweiss*, 122 N.H. 1015, 453 A.2d 1281, 1284 (1982). Under this rule, "[a]ttorney's fees may not be awarded other than when permitted by statute or case law." *Id.*

Banker concedes in his brief that there is no New Hampshire statute or court decision creating a right to attorney's fees in a legal malpractice case. We decline his invitation to import an exception from other jurisdictions. Nor do we find his contractual argument persuasive. He contends that, because the promissory note contained an attorney's fee clause, he cannot be made whole if his recovery in the malpractice action is net of his attorney's fees. That argument rests on a policy decision that should be considered (if at all) by the state's legislature or courts. Absent bad faith on the part of the adverse party, we see no basis under New Hampshire law for an award of attorney's fees to the successful litigant in a legal malpractice action. *See Adams v. Bradshaw*, 135 N.H. 7, 599 A.2d 481, 487–88 (1991) (listing "bad faith" exceptions to American rule), *cert. denied*, —— U.S. ——, 112 S.Ct. 1560, 118 L.Ed.2d 208 (1992). Banker does not demonstrate any inclination on the part of the Supreme Court of New Hampshire to augment in that way the remedies available under state law. Therefore, the district court did not err in refusing to award Banker attorney's fees in this case.

We find all other arguments raised by the parties to be without merit.

### Conclusion

For the foregoing reasons, we vacate the judgment, and remand for findings and conclusions in respect of the issues of proximate cause and the amount of damages (if any) suffered by Banker. In so doing, we affirm the district court's conclusion of legal mal-

practice and its refusal to award Banker attorney's fees.