**SIEMENS ENERGY & AUTOMATION, INC., Plaintiff,**

v.

**COLEMAN ELECTRICAL SUPPLY CO., INC., William Coleman and Stanley Coleman, Defendants.**

**No. Civ.A.98CV3416 (DGT).**

United States District Court, E.D. New York.

April 23, 1999.

Douglas J. Kramer, Baden Kramer Huffman & Brodsky, P.C., New York City, for plaintiff Siemans.

Gary Ettelman, Ettelman & Hochheiser, P.C., Garden City, NY, for defendants William Coleman & Coleman.

Michael A. Levy, Levy & Schneps, P.C., Manhasset, NY, for defendant and cross-claimant, Stanley Coleman.

## OPINION

TRAGER, District Judge.

This is an action for monies owed for goods sold and delivered on an open account. In addition, plaintiff seeks to re-

cover on two separate personal guaranties. Plaintiff has moved for summary judgment against all three defendants.

## Background

Plaintiff, Siemans Energy and Automation Inc. ("Siemans"), manufactures electrical products. Defendant, Coleman Electrical Supply Co., Inc. ("Coleman"), purchased and distributed electrical supplies. Coleman was owned and operated by two, now feuding, brothers William and Stanley Coleman. It appears that, since at least the onset of this action, Coleman has ceased to exist.

In order to induce Siemans to advance Coleman electrical products on an open account, William and Stanley both signed separate personal guaranties dated October 15, 1996. Each individual guaranty ensured all sums advanced by Siemans up to $75,000, plus interest, attorney's fees and costs of collection. Thereafter, Siemans began shipping electrical supplies to Coleman.

In 1998, after losing one of its major clients, Coleman began experiencing financial difficulties and started to fall behind in payments on its outstanding bills. In an attempt to lessen its debt, Coleman offered to return some of the unpaid goods to Siemans for resale. Siemans refused the returns and demanded payment of the outstanding debt along with payment on the personal guaranties. When defendants failed to pay, Siemans commenced this action. In its complaint, Siemans seeks $311,984.37 from defendant Coleman, the amount owed for goods shipped, $75,000 from defendant William, and $75,000 from defendant Stanley pursuant to their personal guaranties.

Defendant Coleman and defendant William assert two major defenses. First, they argue that Siemans had a duty to mitigate its damages and failed to do so. *See* Def. Mem. in Opp. to Pl. Mot. for Sum. J., p. 4. Second, they contend that Siemans violated the distribution agreement's covenant of good faith by engaging in "selective and disparate" pricing methods. *Id.* at p. 7. In addition, defendant Stanley claims that summary judgment is not warranted against him because Siemans' moving papers are insufficient, and more importantly, because there are material questions of fact pertaining to an alleged conspiracy by Siemans and William to defraud Stanley or that this question at least warrants further discovery.

## Discussion

### (1)

Defendants Coleman and William submit one joint opposition to summary judgment. Defendants first contend that Siemans had a duty to mitigate defendants' damages by accepting Coleman's offer to return the unsold goods. Siemans counters that the inventory which Coleman offered to return was subject to the financing lien of Coleman's secured lender, CIT, and that, therefore, if Siemans had accepted the inventory it would have subjected itself to the possibility of an action for conversion by CIT. *See* Decl. of Douglas J. Kramer in Reply to Def. Opp. to Pl. Mot. for Sum. J., *citing* Aff. of Kenny Kirsh, dated 1/21/99.

Since the present case concerns the sale of goods, the duty to mitigate question is governed by § 2–709 of the Uniform Commercial Code ("U.C.C."). *See* N.Y. U.C.C. § 2–709 (McKinney's 1999). Specifically, § 2–709(1)(a) provides, in pertinent part, that "[w]hen the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages ... the price of goods accepted." *Id.* Clearly, since it is undisputed that Coleman accepted the goods shipped by Siemans, Siemans has the right to seek the amount due under the contract. While § 2–709(1)(b) provides that a seller may recover the price "of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price," this section applies only to goods that have been identified but not actually shipped or accepted. *Id.* at § 2–709(1)(b). Thus, § 2–709(1)(b) is not appli-

cable in this case, and there is no obligation under § 2–709 on the part of the seller to accept a return of previously accepted goods.

The distinction between subdivisions (a) and (b) of § 2–709, with respect to the duty to mitigate, is clearly displayed in *Industrial Molded Plastic Products, Inc. v. J. Gross & Son Inc.*, 263 Pa.Super. 515, 398 A.2d 695 (1979), a case concerning a buyer who purchased 5,000,000 clothing clips from a manufacturer, but wrongfully failed to take possession of or pay for 4,228,000 of the clips. Because, in that case, the buyer had repeatedly given assurances that it intended to accept the clips, the court held that the clips had been deemed accepted. The Pennsylvania Superior Court, interpreting U.C.C. § 2–709(1)(a), held that although a duty exists to mitigate when dealing with goods that have merely been identified, "a seller of goods is [ ] entitled to recover the contract price due for goods *accepted* by the buyer." *Id.* at 522, 398 A.2d at 699 (emphasis added). Specifically, the court held that, "[u]nder the code, a buyer's acceptance of goods occurs, inter alia, when, after a reasonable opportunity to inspect the goods, the buyer fails to make an effective rejection of them. To preserve his rights, the seller is only obligated to tender the goods in accordance with the terms of the contract. *The seller is under no obligation to resell accepted goods in order to maintain his action for price.*" *Id.* at 522, 398 A.2d at 699 (citations omitted) (emphasis added). Furthermore, in *Unlaub Co., Inc., v. Sexton*, 568 F.2d 72 (8th Cir.1977), a case involving a contract for the sale of coal screen units, the Eighth Circuit, also interpreting U.C.C. § 2–709(1)(a), held that once the coal screen units had been accepted, the seller was entitled to recover the unpaid balance of the contract price and

was "under no obligation to attempt a resale of accepted goods." *Id.* at 76 n. 3.

Attempting to prove Siemans did, indeed, have some sort of duty to mitigate—the source of which is unspecified—Coleman relies on *Banker v. Nighswander, Martin and Mitchell*, 37 F.3d 866 (2d Cir. 1994). In that case, the plaintiff hired defendant law firm to advise and represent it in its efforts to collect a debt owed on a promissory note. After the United States District Court for the Southern District of New Hampshire granted summary judgment to the debtors on the promissory note, plaintiff brought suit in the United States District Court for the District of Vermont, alleging that the law firm's advice concerning collection on the $350,000 note amounted to legal malpractice. Defendants argued that plaintiff had a duty to mitigate his damages by filing an appeal of the New Hampshire district court's decision. The Second Circuit, however, applying New Hampshire common law, construed the duty to mitigate to attach only in situations where the plaintiff could have avoided losses by "reasonable effort without undue risk, expense or humiliation," and found that the plaintiff was under no duty to mitigate his damages by retaining counsel, at his own expense, to file an appeal. *See Banker*, 37 F.3d at 872 (quoting *Emery v. Caledonia Sand & Gravel Co.*, 117 N.H. 441, 448, 374 A.2d 929, 934 (1977)). Thus, it would appear that *Banker* supports not Coleman's, but Siemans', position. Here, had Siemans accepted the return of goods which were subject to a perfected security interest, Siemans would have opened itself up to liability for conversion, clearly an undue risk.[1] Case law is full of suits by secured creditors against manufacturers and suppliers for wrongly converting the creditors' collateral. In those cases, the manufacturers accepted

---

**1.** It is unclear whether Siemans was aware of CIT's lien at the time the defendants offered to return the goods. At oral argument, counsel for both sides disagreed on the issue. In any case, Siemans' awareness, or lack thereof, of CIT's lien does not affect the outcome

because defendants have failed to offer any evidence either that Siemans had either a statutory or common law duty to accept the return of the goods or that Coleman had the authority or approval of CIT to return the goods to Siemans for resale.

returned goods upon which the secured creditors had obtained liens. *See, e.g., Hong Kong and Shanghai Banking Corp., Ltd., v. HFH USA Corp.*, 805 F.Supp. 133 (W.D.N.Y.1992); *W.N. Provenzo, Inc., v. Monahan & Co., Inc., (In re Monahan & Co., Ltd.)*, 29 B.R. 579 (Bankr.D.Mass. 1983); *NationsBank of D.C., N.A. v. Blier (In re Creative Goldsmiths of Washington, D.C.)*, 178 B.R. 87 (Bankr.D.Md.1995).

Furthermore, as noted, defendants have not cited, nor has research disclosed, any common law case holding that, in the absence of a prior agreement, a manufacturer is under a duty to mitigate its losses by accepting a return from its distributor of goods which have already been sold and delivered. To the contrary, *Reforestacion Cafetalera Agro—Industrial S.A. v. Campesino Food Corp.*, 97 Civ. 5553, 1999 WL 4964 (S.D.N.Y. Jan.6, 1999), explicitly held, without relying on the U.C.C., that a coffee seller is under no duty to mitigate its damages by accepting from a buyer the return of coffee that had been sold, delivered, and accepted. Accordingly, Siemans' duty to mitigate its damages did not involve an obligation to accept the return of already shipped products. As Coleman accepted the delivered goods without objection and, subsequently, failed to pay the price of the goods as it became due, Siemans had an unquestionable right to recover the price of the accepted goods.

■ Defendants next assert that Siemans engaged in a practice of selective pricing with defendants by "charging William Coleman substantially higher prices for the same product given to other distributors within the same geographic location." *See* Def. Coleman and William Coleman Mem. of Law in Opp. to Pl. Mot. for Sum. J., p. 9. Defendants contend that such practice was a violation of the terms of the distribution agreement as well as its implied covenant of good faith and fair dealing. *See* N.Y. U.C.C. § 1–203. The distribution agreement between Siemans and Coleman states, quite ambiguously, that among its responsibilities, Siemans

agreed: "1. To establish, publish, and consistently adhere to a sound Distributor Policy ... 6. To publish and maintain up-to-date price lists and discount sheets." Siemans Statement of Policy Concerning Sales Through Distributors, p. 2. The exact meaning of these clauses is unclear and could possibly be read as Coleman reads them, i.e., to forbid disparate pricing. Nevertheless, Coleman, although in business for some time, has offered no evidence that by this clause Siemans had agreed to charge all of its distributors the same prices or that it was so understood by Siemans' distributors. Furthermore, nowhere else in the distribution agreement does it explicitly state that the seller of goods cannot charge different prices to different customers.

Even though defendants, in an affidavit by William Coleman, have set forth quotes of the different prices charged by Siemans to Coleman and a Coleman competitor, Knickerbocker Electrical Equipment Corporation, this price disparity, alone, does not answer the question of how, under these facts, even if true, Siemans violated the distribution agreement or its duty of good faith and fair dealing. *See* Aff. of William Coleman, annexed as part of Coleman's Opp. To Pl. Mot. For Sum. J., p. 2. Although defendants have set forth no additional evidence to support their contention other than the language of the agreement itself, they assert that they requested pricing documentation from Siemans, but that that request was denied. Assuming that discovery would establish the existence of such price disparities, the issue is what do clauses (1) and (6) mean. Notably, defendants were not barred from deposing plaintiff or other distributors to resolve this issue, but failed to do so. Having failed to take advantage of the opportunity to develop this defense, on this record, there is no issue to be tried. In any event, the existence of widespread price disparities would tend to undercut the claim that the quoted clauses required

identical pricing be given to each of Siemans' distributors.

(2)

Turning to defendant Stanley's defenses, Stanley first claims that Siemans has offered insufficient evidence upon which a reasonable jury would have to conclude that Stanley Coleman was liable on a personal guaranty. Specifically, Stanley challenges the adequacy of the two affidavits offered in support of Siemans' motion for summary judgment.[2] This defense too is without merit.

■ Despite defendant Stanley's contention that the plaintiff's moving papers and affidavits fail to support a motion for summary judgment for lack of sufficiency of the evidence, the movant on a summary judgment motion is not required to submit affidavits in support of a motion for summary judgment. The Supreme Court has held that there is no "express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). Here, plaintiff has submitted sufficient evidence in the form of the personal guaranties and plaintiff's Rule 56.1 statement to satisfy its burden of proof as movant on a motion for summary judgment. *See* Fed.R.Civ.P. 56(c). In addition, defendant Stanley admits to signing the guaranty, to the fact that Siemans demanded payment on the guaranty, and to the fact that Stanley refused to pay. Stanley also admits to Coleman's indebtedness in the amount of $80,000—the amount owed to Siemans at the time Stanley left the company. Equally as significant is the fact that neither defendant Coleman nor defendant William deny or dispute the guaranty obligation or Coleman's indebtedness for some amount to Siemans. In fact, defendants Coleman and William admit to an "indeterminate" indebtedness to

Siemans. *See* Def. Coleman and William Mem. Of Law in Opp. To Pl. Mot. For Sum. J., p. 2. Moreover, at no point did the indebtedness of Coleman to Siemans fall below $75,000. Accordingly, the debt and loan obligation can be deemed to have been established such that no reasonable jury could conclude other than that Coleman and the individual brothers are liable to Siemans—Coleman for an indeterminate amount and the brothers for $75,000 each. Plaintiffs having satisfied their burden of proof on a motion for summary judgment, the burden then shifts to the non-movant to raise a genuine issue of material fact which would warrant continuation of the action. *See* Fed.R.Civ.P. 56(e). Although having had ample opportunity to review Siemans' records, defendant Stanley has chosen to rely on the alleged insufficiencies in Siemans' proof. At this point, Stanley's position begins to smack of delaying tactics.

Stanley, through his opposition papers, next claims that there are, in fact, genuine issues of material fact in the form of an alleged conspiracy between his brother, William, and plaintiff, Siemans, through one or more of its employees, which resulted in a "bogus buyout" of Coleman Corporation and the subsequent triggering of Stanley's $75,000 obligation pursuant to the personal guaranty. *See* Aff. of Stanley Coleman in Opp. to Pl. Mot. for Sum. J., p. 4. In short, Stanley alleges that a Siemans employee, in conjunction with William, purposely increased Coleman's debt by continuing to ship goods notwithstanding Coleman's inability to pay for them. *See* Stanley's Mem. in Opp. to Pl. Mot. for Sum. J., p. 5.

However, again, despite ample opportunity for discovery, at oral argument, counsel for defendant Stanley admitted there was little support for this proposition. *See* Tr. of Oral Argument, dated 4/6/99. Moreover, while Stanley's claim might possibly

---

**2.** In support of its claim Siemans relies on an affidavit of Sarah Kipping, the Credit Coordinator for Siemans, an affidavit of Douglas Kramer, attorney for Siemans, and on the two personal guaranties signed respectively by William and Stanley.

be the basis of some action against his brother, it does not constitute a defense to this action. Indeed, even if the conspiracy claim were supported by more than speculation, Stanley has failed to show how Siemans would be responsible for the actions of a faithless employee who would not be acting on behalf of his employer, but for his own and Stanley's brother's benefit. Therefore, as to defendant Stanley Coleman, summary judgment is also granted.

### Conclusion

For the forgoing reasons, plaintiff's motion for summary judgment is granted as against defendants Stanley Coleman, William Coleman and Coleman Electrical Supply Co.

SO ORDERED: