21-2485
Republic of Turkey v. Christie's Inc., et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2022

(Argued: December 7, 2022                    Decided: March 8, 2023)

Docket No. 21-2485

_____

REPUBLIC OF TURKEY,

*Plaintiff-Counter-Defendant-Appellant*,

v.

CHRISTIE'S INC., MICHAEL STEINHARDT,

*Defendants-Counter-Claimants-Appellees*,

JOHN DOES 1-5,

*Defendants*,

ANATOLIAN MARBLE FEMALE IDOL OF KILIYA TYPE,

*Defendant-in-Rem*.

_____

Before: POOLER, CHIN, and LOHIER, *Circuit Judges*.

The Republic of Turkey appeals from the September 7, 2021 judgment of the United States District Court for the Southern District of New York (Alison J. Nathan, *J.*), concluding after an eight-day bench trial that Turkey failed to prove its ownership of a six-thousand-year-old marble idol. The district court determined that Turkey's claims of replevin and conversion failed and entered a declaratory judgment that all rights, title, and interest to the idol vested in defendant Michael Steinhardt. In addition, the district court held that defendants were entitled to judgment because they established the equitable defense of laches.

On appeal, Turkey argues the district court misconstrued fundamental principles of New York law in each of these holdings. Because we conclude that Turkey prejudiced defendants by unreasonably delaying this action, we affirm the judgment under the doctrine of laches.

Affirmed.

Judge Lohier concurs in part and in the result, and files a separate concurring opinion.

_____

LAWRENCE M. KAYE (Victor J. Rocco, Howard N. Spiegler, Yaél M. Weitz, *on the brief*), Herrick, Feinstein LLP, New York, NY, *for Plaintiff-Counter-Defendant-Appellant.*

L. EDEN BURGESS (Thomas R. Kline, *on the brief*), Cultural Heritage Partners, PLLC, New York, NY and Washington, DC, *for Defendants-Counter-Claimants-Appellees.*

POOLER, *Circuit Judge*:

This appeal arises out of an ownership dispute over the "Stargazer," a six-thousand-year-old marble figurine. Pursuant to its patrimony laws, the Republic of Turkey claims title to the Stargazer, alleging the idol was unlawfully excavated and smuggled out of its borders. Turkey brought claims of conversion and replevin against Christie's Inc., the possessor, Michael Steinhardt, the owner, and the Stargazer itself (collectively, "Defendants") and sought a declaratory judgment that all rights, title, and interest to the Stargazer vested in Turkey. After an



App'x at 215

eight-day bench trial, the district court (Nathan, *J.*) concluded that Turkey failed to prove by a preponderance of the evidence its ownership interest in the Stargazer, and entered a declaratory judgment that all rights, title, and interest to the idol vested in Steinhardt. In

4

addition, the district court found that Turkey slept on its rights and that Defendants had established the equitable defense of laches.

Turkey argues that, in reaching these conclusions, the district court muddled New York law by misallocating the burden of proof and requiring Turkey to preemptively investigate its claim. While unnecessary to resolve this appeal, we write briefly to reiterate the appropriate burden of proof in stolen artwork cases. We ultimately affirm the judgment of the district court, however, as to laches. With this determination, we do not reach the remainder of Turkey's arguments.

Affirmed.

## BACKGROUND

**I.    Factual Background**

We distill these facts from the district court's findings, which we accept unless clearly erroneous. *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); Fed. R. Civ. P. 52(a)(6).

The Stargazer is a marble statuette from the fifth millennium B.C.E., belonging to the Kiliya-type figurine tradition. In pristine condition, the

Stargazer is an exceptionally rare and important cultural artifact. It was crafted in Kulaksizlar, Anatolia, which is within the borders of modern-day Turkey. Though Kiliya figurines were created in Kulaksizlar, the idols were likely exchanged along unknown trade routes, perhaps reaching the islands of the Aegean Sea. More recently, these idols have been featured in personal and public collections.

Much of the Stargazer's history remains untold. It is unstratified, meaning that there is no evidence of its findspot, find date, or excavator. We know that in 1961, J.J. Klejman, an art dealer, sold the idol to Alastair and Edith Martin, art collectors, in New York City. But we do not know where Klejman first encountered the Stargazer, how Klejman came into possession of the idol, or when the Stargazer arrived in New York City.

After this sale, the Stargazer's provenance becomes clearer. The Martins incorporated the idol into their "renowned" Guennol Collection for twenty-two years before transferring it to the Buttercup Beta Corporation—an entity owned by Alastair Martin's son. *See Republic of Turkey v. Christie's, Inc.*, No. 17-cv-3086 (AJN), 2021 WL 4060357, at *2 (S.D.N.Y. Sept. 7, 2021). The Buttercup Beta

6

Corporation sold the Stargazer to the Merrin Gallery in 1993, which, in turn, sold the idol to Steinhardt and his wife, Judy Steinhardt, the same year. In 2017, the Steinhardts consigned it to Christie's Inc. for sale by auction, which featured the Stargazer in the catalogue for its 2017 "Exceptional Sale" and published the idol's known provenance. Turkey made a claim for the statuette shortly thereafter. The Stargazer eventually sold for a bid of $12,700,000.00, but the buyer never took possession of the artifact.

Since the 1960s, the Stargazer has not lived in secrecy. The Martins loaned the idol to the Metropolitan Museum of Art (the "Met") from 1968 through 1993, where it was displayed publicly in the Met's permanent galleries. It was included in the Met's "Centennial Exhibition of the Guennol Collection" from 1969 through 1970 and its gallery label identified its origins as Anatolian. Steinhardt similarly loaned the Stargazer to the Met, where it was exhibited from 1999 through 2007. The gallery label again acknowledged the artifact as Anatolian.

The idol was also featured in publications. Between 1964 and 1990, the Stargazer was referenced in at least seven sources. Notably, authors with connections to Turkey discussed the Stargazer. In 1989, Özgen Acar, the leading

7

journalist on Turkish cultural heritage and later consultant to a former Turkish Minister of Culture, mentioned the idol's place in the Guennol Collection in an article published in a prominent Turkish newspaper. Jürgen Seeher, a scholar in residence at the German Archaeological Institute in Istanbul, addressed the Stargazer in his 1992 article *Anatolian Marble Statues of the Kiliya-Type*, and, in 2014, Önder Bilgi, an archaeology professor at Istanbul University, referenced the idol and featured its image in his book, *Anthropomorphic Representations in Anatolia*.

Turkish awareness of the Stargazer rose throughout the 1990s. In the early 1990s, Acar introduced Rafet Dinç, a specialist in Turkish antiquities at the state-owned Manisa Museum, to Kiliya-type idols. Dinç proceeded to study these statuettes, reading Seeher's article which mentioned the Stargazer. In 1993, Dinç began teaching at a state-owned university but continued to research Kiliya-type idols in association with the Turkish Ministry of Culture. He also led a state-sanctioned survey near Kulaksizlar, reporting to the Ministry of Culture that "Kiliya-type marble idols are of Anatolian origin and are spread in museums and private collections across the world." *Id.* at *4. The Ministry of Culture supported

8

Dinç, approving his continued survey of Kulaksizlar, sponsoring symposiums where he presented his findings, and publishing several of his works analyzing the Stargazer. In particular, the Ministry of Culture published on its website a 1997 essay of Dinç's, which specifically identified the idol as part of the Guennol Collection in New York.

**II.    Procedural History**

Turkey instituted this action on April 27, 2017, asserting claims for replevin and conversion and seeking a declaratory judgment that all rights, title, and interest in the Stargazer belong to Turkey. Defendants counterclaimed, alleging tortious interference with contract and tortious interference with prospective economic advantage, and requesting a declaratory judgment that all rights, title, and interest to the Stargazer vest in Steinhardt. After the parties moved for summary judgment, the district court granted Turkey's motion in part, which sought dismissal of Defendants' tortious interference counterclaims. It denied the parties' motions for summary judgment on the declaratory

judgment, conversion, and replevin claims, however, concluding there were genuine disputes of material fact regarding the ownership of the Stargazer.

Before proceeding to trial, the district court assessed several evidentiary motions. As relevant to this appeal, Turkey moved in limine to introduce evidence of "other acts" undertaken by Steinhardt "to prove Steinhardt's devil-may-care attitude regarding lawful provenance and foreign patrimony laws." *Republic of Turkey v. Christie's Inc.*, 527 F. Supp. 3d 518, 524 (S.D.N.Y. 2021). The district court denied Turkey's motion, excluding the evidence as irrelevant, prohibited, and cumulative.

The district court then conducted a bench trial in April 2021. It issued its Findings of Fact and Conclusions of Law on September 7, 2021, entering judgment in Defendants' favor. As to ownership, the district court determined New York law applied to Turkey's claims, and under New York choice-of-law rules, a 1906 Turkish decree governed Turkey's property interest in the Stargazer. Thus, the district court held, Turkey would establish ownership if it "prove[d] by a preponderance of the evidence that the Idol was found within and exported from the boundaries of modern-day Turkey after 1906 while the

Decree was in effect." *Republic of Turkey*, 2021 WL 4060357, at *6. Given the gaps in the record, the district court held that a preponderance of the evidence did not support this conclusion.

The district court also determined that laches barred Turkey's claims. The district court found that Turkey should have known of its interest in the Stargazer "decades before 2017," when it initiated its recovery attempt, and its delay was inexcusable. *Id.* at *8. This delay prejudiced Defendants, the district court noted, as the Martins and Klejman had all died by the time of trial. Moreover, the district court weighed the reasonableness of the parties' actions, finding that Steinhardt acted with reasonable diligence before purchasing the Stargazer, whereas Turkey acted dilatorily in asserting its claim. Turkey appealed.

**DISCUSSION**

Following a bench trial, we review a district court's findings of fact for clear error "with due regard given to the district court's credibility determinations," *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 870 (2d Cir. 1994), and its conclusions of law de novo, *Hartford Roman Catholic Diocesan*

11

*Corp. v. Interstate Fire & Cas. Co.*, 905 F.3d 84, 88 (2d Cir. 2018). Under the clear error standard, a factual finding will not be upset "unless we are left with the definite and firm conviction that a mistake has been committed." *Banker*, 37 F.3d at 870 (internal quotation marks omitted). But unlike the findings of fact themselves, we review de novo a district court's "application of those facts to draw conclusions of law." *Id.*

We assess evidentiary decisions with deference, reversing only where the rulings are "arbitrary and irrational." *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 256 (2d Cir. 2021) (internal quotation marks omitted). Similarly, we will not disturb the application of laches unless the district court abuses its discretion. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 193 (2d Cir. 1996).

**I.      Ownership**

Turkey does not dispute the district court's determinations that New York law applies to its substantive claims and that Turkish law governs the question of ownership. Nor does it contest that, to meet the strictures of Turkish ownership law, the Stargazer must have been found within and exported from

12

Turkey's borders after 1906. What Turkey asks us to decide is whether the district court correctly concluded that it failed to meet its burden of proof.

New York City is a center for art, "where masterpieces command extraordinary prices at auction and illicit dealing in stolen merchandise is an industry all its own." *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 314 (1991); *see* Bert Demarsin, *Has the Time (of Laches) Come? Recent Nazi-era Art Litigation in the New York Forum*, 59 Buff. L. Rev. 621, 621 (2011). Thus, New York law contains protections for the true owners of stolen property. *Lubell*, 77 N.Y.2d at 317-20. One such protection is with respect to the burden of proof, which is borne by the possessor of an allegedly stolen artwork. *Solomon R. Guggenheim Found. v. Lubell*, 550 N.Y.S.2d 618, 624 (1st Dep't 1990), *aff'd*, 77 N.Y.2d 311 (1991). We have explained, however, that claimants are required to make a "threshold showing that they have an arguable claim" to the property before the burden of proof shifts to the possessor. *Bakalar v. Vavra*, 619 F.3d 136, 147 (2d Cir. 2010).

Turkey asserts that it exceeded this initial burden, presenting evidence that the Stargazer was crafted in Turkey, the original seller of the Stargazer was a notable antiquities trafficker, looted antiquities typically appear on the market

13

shortly after their theft, and there is no record of the Stargazer's provenance before its sale to the Martins in New York. Turkey maintains that these facts constitute, at the very least, a "threshold showing" that the Stargazer was found in Turkey after 1906. Appellant's Br. at 29-30. As such, Turkey argues the burden shifted to Defendants to prove by a preponderance of the evidence that the Stargazer was not stolen—a burden Turkey contends cannot be satisfied.

We have not defined a "threshold showing" of an "arguable claim" of ownership. But we cannot clarify whether Turkey's limited evidence meets this standard because the district court held Turkey to the wrong standard of proof. Instead of analyzing whether Turkey made a "threshold showing," as required by New York law, *see Bakalar*, 619 F.3d at 147, the district court held Turkey to a preponderance of the evidence standard, *see Republic of Turkey*, 2021 WL 4060357, at *7 ("In sum, Turkey bears the burden of proof of establishing by a preponderance of the evidence that it has an ownership claim to the Idol.").

This error infects the district court's analysis. When weighing the factual record as to where the Stargazer was discovered, the district court articulated the wrong burden. *See id.* ("Nor does JJ Klejman's role in bringing the Idol to the

14

United States support Turkey's contention that a preponderance of the evidence proves the Idol's discovery in modern-day Turkey."). Similarly, the district court found that the evidence supported two equally plausible scenarios—1) that the Stargazer was found in the 1960s and immediately brought to market and 2) that the Stargazer was discovered prior to 1906 but did not fascinate scholars or collectors for several decades. The district court found this equipoise insufficient to meet a preponderance standard. We are left to speculate, however, how the district court would have viewed these facts under a different standard of proof.

From this record, we cannot squarely address whether Turkey met its threshold burden. Nevertheless, we write to emphasize that under New York law, the ultimate burden of proof does not rest on the shoulders of the claimant. *Lubell*, 77 N.Y.2d at 321. Rather, the claimant must only make a "threshold showing" of an "arguable claim" to the pilfered artwork before the possessor must carry the rest. *Bakalar*, 619 F.3d at 147; *see also Lubell*, 550 N.Y.S.2d at 624 ("We recognize this burden to be an onerous one, but it well serves to give effect to the principle that persons deal with the property in chattels or exercise acts of

15

ownership over them at their peril." (internal quotation marks and alterations omitted)).

**II.    Laches**

Turkey next asks us to address whether the district court abused its discretion in applying the doctrine of laches. Laches is an equitable defense, precluding the claims of a plaintiff who is "guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997) (internal quotation marks omitted). To prevail, a defendant must establish "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998). The first of these elements may be established where a plaintiff "should have known" of the injury. *Philippine Am. Lace Corp. v. 236 W. 40th St. Corp.*, 822 N.Y.S.2d 25, 27 (1st Dep't 2006).

**A.      Awareness and Delay**

We begin with Turkey's assertion that the district court improperly added a duty of investigation to the laches analysis. The district court found that academics with connections to the Turkish Ministry of Culture were discussing the Stargazer by the early 1990s, and this awareness "should have put Turkey on notice as to its potential claim—at least enough to inquire further." *Republic of Turkey*, 2021 WL 4060357, at *9. By failing to investigate, the district court concluded, Turkey's delay became unreasonable.

Turkey contends there is no duty for a claimant, especially a foreign sovereign, to investigate antiquities it does not know to be stolen. It argues this would place an "impossible burden" on countries which have a "vast trove of unknown ancient artifacts." Appellant's Br. at 40. According to Turkey, it only became clear the Stargazer was looted when Christie's Inc. published its 2017 catalogue, which listed the Stargazer's limited provenance. Thus, Turkey argues that it did not delay bringing this action in 2017.

Though the doctrine of laches contains a knowledge requirement, *see Ikelionwu*, 150 F.3d at 237, plaintiffs need not be aware of the specific

17

circumstances giving rise to their claim. *See Philippine Am. Lace Corp.*, 822 N.Y.S.2d at 27. And here, Turkey was privy to enough information that it should have known of its claim to the Stargazer. Under its patrimony laws, Turkey asserts ownership over antiquities found within its borders—including the region of Anatolia. For decades, the Stargazer was described in literature and on public display as Anatolian. Cultural heritage experts reported to the Turkish Ministry of Culture that Kiliya-type idols were "spread in museums and private collections across the world" and specifically mentioned the Stargazer and its residence in New York City. *Republic of Turkey*, 2021 WL 4060357, at *8. Moreover, throughout the 1990s, the Ministry of Culture itself published essays and presentations discussing the Stargazer and its Anatolian roots.

As a result, Turkey should have been aware of its potential claim in the 1990s. The district court did not improperly add an investigation element to the doctrine of laches. Instead, the district court simply concluded that, considering the information available to Turkey, its failure to assert or even investigate its claim to the Stargazer for over twenty-five years was unreasonable. This was not an abuse of discretion. *See Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193

18

(2d Cir. 2019) (discussing a New York court's holding that a delay of twelve years was "inordinate" (internal quotation marks omitted)).

Contrary to its urgings, Turkey did not have to be explicitly aware that the Stargazer was stolen for Defendants to succeed on their laches defense. Such a requirement would nullify the "should have known" standard—transforming it into a knowledge standard. New York law is not so exacting. *See e.g.*, *Philippine Am. Lace Corp.*, 822 N.Y.S.2d at 27; *Kraker v. Roll*, 474 N.Y.S.2d 527, 533 (2d Dep't 1984).

Turkey cites *Lubell* to resist this conclusion, but that case does not provide the refuge Turkey seeks. There, in considering the grant of summary judgment to a defendant in possession of an allegedly stolen painting, the First Department concluded there was a dispute of fact as to when the plaintiff should have realized the painting was stolen. *Lubell*, 550 N.Y.S.2d at 151. This was particularly relevant, the court noted, because if the plaintiff did not have reason to know of the painting's disappearance until after its sale to the defendant, then the subsequent sale could not have been avoided by the plaintiff's diligence. *Id.* at 151-52. Rather than support Turkey's argument, however, the logical inverse of

*Lubell*'s holding bolsters our conclusion. Because Turkey had reason to know the Stargazer was its cultural patrimony in the 1990s, it had reason to investigate the artifact and assert its claim to ownership.

This is not to say that sovereign nations have a standing obligation to investigate the potential theft of their dispersed artifacts. But Turkey sat on its hands despite signals from its own Ministry of Culture that the Stargazer was in New York City. Turkey's failure to bring its claim (or even investigate it) until 2017 was unreasonable.

**B.    Prejudice**

Although Turkey was guilty of an unreasonable delay, that delay must have prejudiced Defendants for laches to apply. *See Ikelionwu*, 150 F.3d at 237. Turkey makes two arguments against the district court's conclusion that it did. First, while the district court referenced "the death of potential witnesses," *Republic of Turkey*, 2021 WL 4060357, at *10, Turkey asserts that the deaths of the Martins and Klejman did not prejudice Defendants because their testimony

20

remains unknown. Second, Turkey insists that Steinhardt would have purchased the Stargazer even if he knew that it was stolen.

"A defendant has been prejudiced by a delay when the assertion of a claim available some time ago would be inequitable in light of the delay in bringing that claim." *Conopco, Inc.*, 95 F.3d at 192 (internal quotation marks omitted). The deaths of the Martins and Klejman deprived Defendants of key witnesses,[1] forming just such an inequity. Indeed, if Defendants had been held to their burden of proving that the Stargazer was not stolen, they could not have produced a witness testifying as to where, when, and how Klejman came into possession of the Stargazer—testimony potentially absolving Defendants from liability. That this testimony remains unknown demonstrates why Turkey's delay was prejudicial. *See Stone v. Williams*, 873 F.2d 620, 625 (2d Cir. 1989), *cert. denied*, 493 U.S. 959, *opinion vacated on reh'g on other grounds*, 891 F.2d 401 (2d Cir. 1989), *cert. denied*, 496 U.S. 937 (1990) ("One form of prejudice is the decreased ability of the defendants to vindicate themselves that results from the death of

---

[1] Edith Martin died in 1989, Alastair Martin died in 2010, and J.J. Klejman died in 1995.

21

witnesses . . . ."); *Zuckerman*, 928 F.3d at 194 ("No witnesses remain who could testify on behalf of the Met that the Sale was voluntary, or indeed on behalf of the Plaintiff that the Painting was sold involuntarily." (internal quotation marks and alterations omitted)). While Turkey theorizes that Steinhardt could have elicited this testimony by talking to the Martins and Klejman while they were alive, he was under no specific obligation to do so to support this finding.

Moreover, Turkey's speculation that Steinhardt would have purchased the Stargazer even if he knew it was stolen does not render the district court's determination an abuse of discretion. In making this argument, Turkey relies upon evidence of "other acts" taken by Steinhart, including his past purchase of unprovenanced antiquities. This evidence was excluded by the district court under Federal Rules of Evidence 401, 403, and 404(b). Though Turkey insists that this evidence demonstrates Steinhardt's "indifference" to the provenance of the Stargazer, Appellant's Br. at 45, Rule 404(b) directly prohibits the admission of prior-acts evidence to prove that "on a particular occasion the person acted in accordance" with a character trait—such as buying unprovenanced antiquities. Fed. R. Evid. 404(b)(1); *see Berkovich v. Hicks*, 922 F.2d 1018, 1022-23 (2d Cir. 1991).

22

We thus do not find this evidentiary decision "arbitrary [or] irrational." *Omega SA*, 984 F.3d at 256.

### C. Reasonable Diligence

The application of laches also requires a fact-intensive inquiry into the reasonable diligence of both parties. *Lubell*, 77 N.Y.2d at 321; *see also Zuckerman*, 928 F.3d at 196 ("Unlike a mechanical application of a statute of limitations, a laches defense requires a careful analysis of the respective positions of the parties in search of a just and fair solution."). Turkey quarrels with the district court's findings in this regard. It seeks to hold Steinhardt to the level of diligence typically reserved for art dealers, museums, and other commercial actors under New York's Uniform Commercial Code and argues that by failing to contact the Republic of Turkey, the Martins, or Klejman, Steinhardt exhibited "indifference as to the provenance" of the Stargazer. Appellant's Br. at 49.

Turkey misconstrues the district court's rationale. After concluding that Steinhardt, as an ordinary purchaser of art, was under no duty to investigate the provenance of the Stargazer, the district court determined that he nevertheless *did* investigate the idol's provenance. It detailed that Steinhardt, whom it found

23

to be a "credible witness," questioned the Merrin Gallery about the Stargazer, reviewed a report on the idol that was authored by a "noted" art expert, met with other experts, and relied upon the "Met's good reputation." *Republic of Turkey*, 2021 WL 4060357, at *11. It determined these efforts were "reasonably diligent." *Id.*

Turkey contends that Steinhardt's failure to take additional steps renders these findings clearly erroneous. But with "due regard" to the district court's credibility determination, we cannot say that Steinhardt's omission in contacting the Republic of Turkey, the Martins, or Klejman leaves us with a "firm conviction that a mistake has been committed." *Banker*, 37 F.3d at 870. And after contrasting Steinhardt's investigation into the Stargazer's provenance with Turkey's failure to act for over twenty-five years, we do not find that the district court abused its discretion in balancing the parties' respective diligence. *See Lubell*, 77 N.Y.2d at 321.

**CONCLUSION**

Equity favors the vigilant. *See Ikelionwu*, 150 F.3d at 237. But in this case, because Turkey has slept on its rights, we affirm the judgment of the district court.

LOHIER, *Circuit Judge*, concurring:

I concur fully in the excellent Part II of the Discussion, which affirms based on the narrow, but sufficient ground that the District Court correctly applied the doctrine of laches. I emphasize that Part I of the Discussion, which relates to a somewhat complex burden-shifting issue under New York state law as to which I express no view, does not contain any holding.