The UNLAUB COMPANY, INC., Appellee,

v.

Sam SEXTON, Jr., Appellant.

No. 77–1293.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1977.

Decided Dec. 21, 1977.

Josef V. Hobson, Fort Smith, Ark., on brief, for appellant.

Thomas Harper, Fort Smith, Ark., on brief, for appellee.

Before GIBSON, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and LAY, Circuit Judge.

VAN OOSTERHOUT, Senior Circuit Judge.

This is a diversity action brought by the Unlaub Company, Inc. (Unlaub), an Oklahoma corporation with principal place of business in Oklahoma, against Sam Sexton, Jr., a citizen and resident of Arkansas, to recover an alleged $54,177.00 balance due, with interest from July 22, 1975, on the price of certain coal screen units which are the subject of a contract of sale between Unlaub as seller and Paul Rees Coal Company (the coal company) as buyer. Sexton is president of, and in writing personally guaranteed performance of the contract by, the coal company. The district court,[1] in an opinion reported at 427 F.Supp. 1360 (W.D. Ark.1977), granted summary judgment for Unlaub in the amount claimed. We affirm.

The contract in question, dated May 7, 1975, specified a total price for the coal screen units of $67,721.00 and required a down payment in the amount of $13,544.00, which the parties agree was paid by the coal company. Under the contract the coal screen units were to be manufactured by Simplicity Engineering Company (Simplicity) at Durand, Michigan, and were to be picked up there by the coal company upon receipt of notice from Unlaub that the goods were available. The contract was contained in the following letter, which we reproduce in full:

Paul Reese [sic] Coal Company
Fort Smith, Arkansas 72901
Gentlemen:

This letter is to confirm in writing our agreement regarding your purchase from us of Simplicity screen units, as set forth in Proposal JM 041175–1, dated April 11, 1975, from Simplicity Engineering Company, which is incorporated herein.

This Proposal shall become your purchase order to us with a result that the total purchase price, F.O.B. Durand, Michigan, shall be $67,721.00 plus applicable sales or use taxes, of which your cashier's or certified check for 20% or $13,544.00 shall accompany your acceptance of this letter and the remaining $54,177.00, plus applicable sales or use taxes, shall either (i) be placed in escrow with a Fort Smith bank to be mutually selected by us on or before May 1, 1975, or (ii) Sam Sexton, Jr. and Robert Lane, the owners of all of the outstanding capital stock of Paul Reese Coal Company, shall personally guaranty full performance and payment of all obligations of Paul Reese Coal Company pursuant thereto. The balance of $54,177.00, plus

---

1. The Honorable John E. Miller, United States Senior District Judge.

applicable sales or use taxes, shall be paid to The Unlaub Company upon receipt by you of notice that the Simplicity screen units are available to be picked up by you at Durand, Michigan. Title and risk of loss shall pass to you at such time.

If this is satisfactory to you, please accept this agreement in the space below and return it to us with your check for $13,544.00 payable to The Unlaub Company and provide us with either an escrow agreement for our approval or the signatures of the Guarantors in the spaces provided below.

> Very truly yours,
> THE UNLAUB COMPANY
> By /s/ B. J. Coulter

The foregoing is approved and accepted on 5/7/75.

> PAUL REESE [sic] COAL COMPANY
> By /s/ Sam Sexton, Jr.
> Sam Sexton, Jr., President and duly authorized representative
> /s/ Sam Sexton, Jr.
> Sam Sexton, Jr., as Guarantor
> /s/ Robert Lane
> Robert Lane, as Guarantor

Sexton admits that his signatures to this contract were authorized by him.

On July 22, 1975, Unlaub allegedly sent, by registered mail, the following notification to Sexton that the goods were available to be picked up in Durand, Michigan:

MR. SAM SEXTON, JR.
515 GARRISON ST.
FORT SMITH, ARKANSAS 72901
DEAR MR. SEXTON,
THIS WILL CONFIRM THE SEVERAL TELEPHONE CALLS BY OUR MR. JENNINGS, NOTIFYING YOU THAT THE FOUR SIMPLICITY SCREENS COVERED BY THE PURCHASE CONTRACT DATED MAY 7, 1975, ARE READY FOR YOU TO HAVE PICKED UP AT THE SIMPLICITY FACTORY AT DURAND, MICHIGAN.
AS PROVIDED IN THE CONTRACT, UPON THIS NOTIFICATION YOU ARE TO PAY US THE BALANCE OF THE PURCHASE PRICE, FIFTY FOUR THOUSAND ONE HUNDRED SEVENTY SEVEN DOLLARS ($54177.00), PLUS ANY SALES OR USE TAXES WHICH MAY BE DUE. SINCE WE HAVE NOT RECEIVED ANY SALES TAX EXEMPTION CERTIFICATION FROM YOU, THE PROPER ARKANSAS OR OKLAHOMA TAXES MUST BE ADDED TO THIS CONTRACT BALANCE.
WE WILL ASK THAT YOU ACT PROMPTLY ON THIS MATTER, AS SIMPLICITY IS PRESSING US FOR THE PAYMENT DUE THEM, AS WELL AS FOR DISPOSITION OF THE EQUIPMENT.

> CORDIALLY YOURS,
> THE UNLAUB COMPANY, INC.
> /s/ C. G. Unlaub

Copies of this letter and of the registry and return receipts therefor, the latter dated July 23, 1975, are attached to Unlaub's complaint and to supporting affidavits filed by Unlaub.

██ Sexton in answer denies the allegations of the complaint concerning the sending and receipt of the July 22 letter, but an examination of the record reveals absolutely nothing in support of this denial. Rule 56(e), Fed.R.Civ.P., in part provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*See Anderson v. Viking Pump Div.*, 545 F.2d 1127, 1129 (8th Cir. 1976); *Lyons v. Board of Educ.*, 523 F.2d 340, 346–47 (8th Cir. 1975); *Willmar Poultry Co. v. Morton-Norwich Products, Inc.*, 520 F.2d 289, 293–94 (8th Cir. 1975). In accordance with this provision, we find no genuine dispute of the fact the letter was sent and received on the respective dates indicated.

■ Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As we have often recognized, it is an extreme remedy which is not to be granted unless the movant has established his right to judgment with such clarity as to leave no room for controversy and that the other party is not entitled to judgment under any circumstances; the court must view the facts most favorably to the party opposing the motion and give that party the benefit of any reasonable inferences to be drawn from the facts. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977).

■ Under even these strict guidelines, however, we agree with the district court that, on the basis of facts not genuinely disputed, Unlaub is entitled as a matter of law to recover from Sexton the unpaid balance of the price of the coal screen units. This result follows necessarily from unambiguous provisions of Article II of the Uniform Commercial Code as adopted in Arkansas, Ark.Stat.Ann. §§ 85–2–101 *et seq.* (Add.1961), and from the most basic principles of guarantor liability.[2]

Uniform Commercial Code subsection 2–709(1) provides in pertinent part: "When the buyer fails to pay the price as it becomes due the seller may recover . . .

the price (a) of goods accepted . . . ."[3] Under subsection 2–606(1), "Acceptance of goods occurs when the buyer . . . (b) fails to make an effective rejection (subsection (1) of Section 2–602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them . . . ." Subsection 2–602(1) in turn provides: "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." Finally, under subsection 2–503(1):

Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery. The manner, time and place for tender are determined by the agreement and this Article, and in particular

(a) tender must be at a reasonable hour, and if it is of goods they must be kept available for the period reasonably necessary to enable the buyer to take possession . . . .

When these provisions are read in conjunction with facts in this case not genuinely disputed, Unlaub's right to recover the unpaid balance of the contract price is established as a matter of law.

■ Under the terms of the May 7 contract, tender would occur "upon receipt by [the coal company] of notice that the Simplicity screen units are available to be picked up by [the coal company] at Durand,

2. The parties appear to agree that Arkansas law governs the present controversy, and we will assume they are correct. In any event, the pertinent provisions of Article II on which we rely are in effect in Oklahoma and Michigan as well as in Arkansas. Clearly, the law of one of these three states applies.

Despite the district court's doubts on the matter, 427 F.Supp. at 1367, Article II does govern the rights and liabilities between Unlaub and the coal company. Uniform Commercial Code Section 2–102 and subsections 2–105(1) & (2) and 2–106(1). Sexton as guarantor is of course bound by his principal's liability on the contract.

3. Subsection 2–709(1) also provides that an unpaid seller may recover the price "(b) of goods

identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing." The district court concluded Unlaub was entitled to relief under this provision. 427 F.Supp. at 1368. While there is substantial support in the record for that conclusion, we cannot say the record reveals no genuine dispute of material fact with respect thereto. We accordingly do not affirm on that basis.

Section 2–709 on its face makes clear in the context of this case that a seller is under no obligation to attempt a resale of accepted goods.

Michigan." [4] Tender was made in accordance with this contractual provision by letter dated July 22. As previously noted, Sexton does not genuinely dispute that the letter was sent and received. There is similarly no genuine issue raised as to the reasonableness of the tender or the conformity of the goods to the contract. The tender was accordingly a proper one under the contract and subsection 2–503(1).

■ Sexton has similarly failed to support any contention that either he or the coal company rejected, or even attempted to reject, the tender. By affidavit Jim Jennings on behalf of Unlaub recited: "Prior to [the July 22 letter] I had, on several occasions, telephoned Mr. Sexton or his representatives . . . to advise that the screens were ready for delivery upon performance of the purchase agreement of May 7, 1975. In each of these conversations I was told the screens would be picked up within a few days." Although Sexton did file an affidavit, he did not therein or otherwise controvert this recitation. The record is devoid of any indication that either Sexton or the coal company complied with subsection 2–602(1), as there is no indication that notice, either seasonable or unseasonable, was given to Unlaub that the goods would not be accepted. Nor does the record reveal any basis upon which the tender could properly have been rejected. Once again relying on Rule 56(e), Fed.R.Civ.P., quoted *supra*, we necessarily reach the conclusion that no rejection occurred.

■ Because it is equally clear that an opportunity to inspect the goods has been provided, it follows immediately that the goods were accepted under subsection 2–606(1)(b) and that Unlaub is accordingly entitled to recover the unpaid balance of the contract price under subsection 2–709(1)(a). *See Kohlenberger, Inc. v. Tyson's Foods, Inc.*, 256 Ark. 584, 510 S.W.2d 555, 560–61 (1974).[5]

■ Sexton raises several additional contentions on appeal, all of which are without merit. First, he contests the jurisdiction of the district court under 28 U.S.C. § 1332 on the ground the amount in controversy does not exceed ten thousand dollars. He argues under Uniform Commercial Code Section 2–708 that Unlaub can only recover the excess, alleged to be zero, of the unpaid balance of the contract price over the market value of the coal screen units. Our conclusion that Unlaub is entitled to recover the unpaid balance of the contract price under Section 2–709, however, establishes a

---

4. The contract also contained the delivery term "F.O.B. Durand, Michigan." Uniform Commercial Code subsection 2–319(1) in part provides (emphasis supplied):

> Unless otherwise agreed the term F.O.B. (which means "free on board") at a named place, even though used only in connection with the stated price, is a delivery term under which
>
> (a) when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this Article (Section 2–504) and bear the expense and risk of putting them into the possession of the carrier.

The parties, in contracting that title and risk of loss would pass to the buyer at the time of payment, which was to occur upon receipt of notice that the goods were available to be picked up by the buyer at Durand, Michigan, plainly agreed otherwise.

5. Under the contract, title to the coal screen units would not pass to the coal company until payment therefor was remitted. Accordingly, since payment has not yet been remitted, title remains with Unlaub, which has indisputedly paid Simplicity in full.

Sexton appears to suggest that the failure of title to pass to the coal company precludes a finding of acceptance. Uniform Commercial Code Section 2–401 in part provides:

> Each provision of this Article [II] with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title.

Section 2–606 on acceptance makes no reference whatsoever to title, and Comment 2 to that section confirms that the rules on acceptance operate independently of any consideration of title.

Upon satisfaction of the judgment herein, of course, title will pass to the coal company, and the coal company will be free to pick up the coal screen units at Durand, Michigan, in accordance with the contract and such law as may be applicable. We note in this regard that the goods have indisputedly remained available for pickup at all times since July 22, 1975.

jurisdictional amount well in excess of ten thousand dollars.

 Sexton also contends that Unlaub was in violation of Ark.Stat.Ann. §§ 64–1201 *et seq.* (Repl.1966 & Supp.1975), in that Unlaub is an Oklahoma corporation not authorized to do business in Arkansas, and that the contract on which this action is based is accordingly void. We agree with the district court that the contract concerns a transaction solely in interstate commerce which is consequently not subject to the statute. For the reasons stated by the district court, 427 F.Supp. at 1365–66, we affirm on this issue.

Finally, Sexton contends the district court erred in refusing to grant him leave to amend his answer under Rule 15(a), Fed.R.Civ.P. None of the matters set forth in the proposed amended answer would affect the result we reach. The proposed amended answer merely presented the jurisdictional argument under 28 U.S.C. § 1332 discussed above, summarily alleged that Unlaub's damages were nonexistent, and averred that Unlaub did not make reasonable efforts to dispose of the coal screen units. Both the district court and this court have considered on the merits and rejected the jurisdictional challenge and the claim that Unlaub sustained no damages. We also have noted, *supra* note 3, that a seller is, under the facts of this case, under no obligation to attempt to dispose of accepted goods. Accordingly, even if the district court did abuse its discretion in denying leave to amend the answer, the error was harmless.

The judgment appealed from is affirmed.