**Farmers Production Credit Association v. Frank Arena**

[481 A.2d 1064]

No. 83-141

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed August 17, 1984

*Hughes, Miller & Candon,* Norwich, for Plaintiff-Appellee.

*Divoll & Doores, P.C.,* Bellows Falls, for Defendant-Appellant.

**Gibson, J.** Defendant appeals a judgment entered against him following trial by court. The parties submitted the matter to the lower court on an agreed statement of facts. We affirm.

Plaintiff brought suit on a promissory note seeking to collect the overdue balance thereon. When the note was executed in

1973, defendant signed as a co-endorser with one Charles Michelson in order to obtain funds for their corporation, A & M Westminster Farm, Inc., to purchase and equip a dairy farm. At that time, defendant was president and 50% owner of the corporation. He signed the note both as president of the corporation and in his individual capacity. The note was secured by a second mortgage on the real property and a security interest in all the farm machinery, all crops and some 450 head of cattle. The corporation also obtained financing from the Federal Land Bank of Springfield, which was given a first mortgage on the real estate.

Defendant managed the farm until 1976 when the other stockholder became dissatisfied with the manner in which the farm was being operated. The dispute was resolved by bringing in Michelson's brother as manager and making him an equal one-third owner with the other two.

In August 1977 defendant learned that most of the herd was gone from the farm and only 37 cattle remained. At that time the corporation's loan payments were also in arrears. When defendant notified plaintiff that the cattle were gone, plaintiff took an assignment of the first mortgage, foreclosed on the property and sold the real estate. Plaintiff also exercised its right to sell the remaining cattle, crops and equipment. Plaintiff then brought this lawsuit to recover the balance due.

In his defense, defendant claims (1) that he is entitled to a discharge from liability under 9A V.S.A. § 3—606 because plaintiff, by making no attempt to locate the missing cattle or assign rights to defendant so he could pursue them, unjustifiably impaired any collateral value the cattle might have had, and (2) that plaintiff is estopped by its actions from seeking recovery from defendant.

9A V.S.A. § 3—606 provides as follows:

> (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder
> . . . .
> (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

As used in 9A V.S.A. Article 3, "instrument" is defined to mean "a negotiable instrument." *Id.* § 3—102(1)(e). In order

to be "negotiable," an instrument must fulfill certain conditions, including the requirement that it "contain an unconditional promise or order to pay a *sum certain." Id.* § 3—104(1)(b) (emphasis added). The "sum certain" requirement is fulfilled when the holder of an instrument is able to determine the amount then payable from the instrument itself, with any necessary computation. *Id.* § 3—106, comment 1. The computation must be one that can be made from the instrument itself without reference to any outside source; the statute "does not make negotiable a note payable with interest 'at the current rate.' " *Id.*

██ In this case, the instrument executed by the parties allowed for "future advances" to be made by plaintiff from time to time and also provided for a variable interest rate. As found by the trial court, plaintiff did advance additional funds from time to time, the last advance having been made in June 1975. It is thus impossible to determine from the instrument itself what the principal outstanding balance might be at any particular time or what rate of interest might be in effect. Thus, the instrument was nonnegotiable, and defendant is not entitled to be discharged from liability under 9A V.S.A. § 3—606.

As a second affirmative defense, defendant raises the issue of estoppel, claiming that plaintiff was guilty of both equitable estoppel and estoppel by waiver because of its conduct in not pursuing the missing cattle. Defendant contends that it was the parties' intention that he, as an accommodation endorser, would be liable only for any deficiency that might result after the security was first applied to any balance remaining due, that it is a custom of the trade for a secured party to proceed against the security first, particularly where, as here, the value of the security was more than adequate to cover the loan, and that he had a right to believe that plaintiff would look first for payment from the collateral that secured the loan.

██ Unfortunately, none of defendant's theories found their way into the document executed by the parties. The note contains no language limiting or qualifying defendant's liability in the event of default, nor does it obligate plaintiff to look first to any collateral before seeking relief from defend-

24

ant. Article 9 of Title 9A, V.S.A., governs secured transactions, and § 9—501(1) thereof provides as follows:

> When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and except as limited by subsection (3)* those provided in the security agreement. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. . . . The rights and remedies referred to in this subsection are cumulative.

Thus, plaintiff, as a secured party, has a choice of remedies. Plaintiff is not obligated, as a matter of law, to chase after the missing cattle; it may, instead, elect to reduce its claim to judgment, and this is the course it has chosen. See J. White & R. Summers, Uniform Commercial Code § 26—4 (2d ed. 1980) (discussion of creditor's alternatives, upon default, under Article 9).

■ When defendant endorsed the note without qualification, he undertook, absent evidence of any other understanding between the parties, the obligations of a maker. *Duchaine* v. *Phoenix,* 100 Vt. 112, 115, 135 A. 715, 716 (1927) (later app. 101 Vt. 308, 143 A. 301 (1928)); *Barrows* v. *Lane,* 5 Vt. 161, 164 (1832). Although there are few recent cases dealing with the duties of an accommodation party on a nonnegotiable instrument, Vermont's approach is in accord with the overwhelming weight of authority. *Virginia Lee Homes, Inc.* v. *Schneider & Felix Construction Co.,* 64 Wash. 2d 897, 899–900, 395 P.2d 99, 101, 18 A.L.R.3d 641, 645 (1964).

■■ The burden of proof to establish estoppel rests with defendant as the party asserting the estoppel. *Fisher* v. *Poole,* 142 Vt. 162, 168, 453 A.2d 408, 411–12 (1982) (equitable estoppel); *American Fidelity Co.* v. *Kerr,* 138 Vt. 359, 362, 416 A.2d 163, 165 (1980) (waiver or estoppel by conduct). The parties submitted this matter to the court on a stipulation of facts. There is nothing in the stipulation or in the findings of

---

* Section 9—501(3) lists certain sections of Title 9A that apply whenever a secured party is in possession of the collateral or seeks to redeem or dispose of it.

the court to support the defendant's allegations that he was to be liable for any deficiency only after disposition of the security, or that it is a custom of the trade, in cases where the security is adequate, for the secured party to proceed against the security first, or that defendant had a right to believe plaintiff would proceed in such manner. Nor is there any evidence that plaintiff acted in a manner so as to waive any rights it had or prejudice any rights defendant might have had in the cattle. The record further indicates and the court found that plaintiff referred this matter in 1978 to the office of the United States Attorney for possible prosecution for criminal conversion of secured property and received a response to the effect that there had been no criminal conversion and that it appeared to that office, following its investigation, that the proceeds from the sale of the cattle had all gone to the corporation in an attempt to stave off financial collapse. Defendant has not sustained his burden of proof as to either equitable estoppel or estoppel by waiver.

*Affirmed.*

