**LAND O'LAKES PURINA FEED LLC, Plaintiff,**

v.

**Luke JAEGER, Defendant.**

**No. 4:12–cv–00467–RAW.**

United States District Court,
S.D. Iowa,
Central Division.

Oct. 7, 2013.

Joshua C. Dickinson, Spencer Fane Britt & Browne, LLP, Omaha, NE, for Plaintiff.

John Corey Wagner, Wagner Law Firm, Amana, IA, for Defendant.

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROSS A. WALTERS, United States Magistrate Judge.

Plaintiff's Motion for Summary Judgment [14] is before the Court on papers filed. This is a collections case for which plaintiff Land O'Lakes Purina Feed LLC ("Land O'Lakes") is seeking payment from defendant Luke Jaeger ("Jaeger").

### I.

### UNDISPUTED FACTS

Land O'Lakes entered into a contract entitled "Customer Weaned Pig Purchase and Security Agreement" ("Agreement") with Jaeger to sell him weaned pigs on credit for $38.00 per pig. (Pl.'s App. 2, Starke Aff. ¶ 5 [14–3]; Pl.'s App. 6–18, Ex. A Agreement [14–3] ). It provided that Land O'Lakes would deliver approximately 2,400 to 2,450 weaned pigs every nine weeks for fourteen months. (Pl.'s App. 4, Starke Aff. ¶ 12 [14–3] (citing Pl.'s App. 7–8, Ex. A Agreement §§ 4, 6 [14–3] )). In support of the agreement, Land O'Lakes and Jaeger also executed a "Credit Application and Agreement." (*See* Pl.'s App. 2, Starke Aff. ¶ 6 [14–3] (citing Pl.'s App. 19–21, Ex. B Credit Application and Agreement [14–3] )). The Credit Application and Agreement required Jaeger pay the invoiced amount, as well as late charges on any overdue amount at a rate of eighteen percent per year. (Pl.'s App. 2, Starke Aff. ¶ 6 [14–3]; Pl.'s App. 20, Ex. B Credit Application and Agreement § 3 [14–3] ).

Land O'Lakes delivered 2,276 weaned pigs to Jaeger in July 2012. (Pl.'s App. 2, Starke Aff. ¶ 7 [14–3]; Pl.'s App. 22–23, Ex. C Invoice No. 87086984, Invoice No. 87092070 [14–3] ). Jaeger accepted all of the pigs. (Pl.'s App. 3, Starke Aff. ¶ 10 [14–3] ). Land O'Lakes billed Jaeger for the pigs received in July, splitting the costs between two invoices. Invoice number 87086984 was for the amount of $49,670.61, and it was due August 3. (Pl.'s App. 22, Ex. C. Invoice No. 87086984 [14–3] ). Invoice number 87092070 was for the amount of $43,442.12, and it was due August 6. (Pl.'s App. 23, Ex. C. Invoice No.

87092070 [14–3] ). The total price of the July shipment was $93,112.73. Jaeger sent a check to Land O'Lakes for that amount. (Pl.'s App. 3, Starke Aff. ¶ 8 [14–3] ). However, Jaeger's bank dishonored his check because he did not have sufficient funds.(Pl.'s App. 3, Starke Aff. ¶ 8 [14–3] ). Plaintiff did not otherwise pay for the July shipment. (Pl.'s App. 3, Starke Aff. ¶ 9 [14–3] ).

## II.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party establishes there are no genuine disputes over material facts, and it is entitled to judgment as a matter of law. *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 467 (8th Cir.2011) (citing Fed.R.Civ.P. 56(a)). "A material fact is a fact that 'might affect the outcome of the suit under governing law.'" *See Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Teleconnect Co. v. Ensrud*, 55 F.3d 357, 359 (8th Cir.1995)(quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

## III.

## LAW & APPLICATION

Jaeger has conceded he did not pay the amount due, and therefore, he is liable. (Def.'s Mem. of Law in Supp. of Resist. 2 [17–1] ). But, Jaeger argues that factual disputes remain concerning whether Land O'Lakes mitigated its losses. (*Id.* [17–1] ). Before the Court decides whether there is a factual dispute, the Court must determine if mitigation is required as a matter of law. Finally, Land O'Lakes is seeking eighteen percent contract interest through the date of judgment ("late charges").[1]

*A. Controlling Law: Does the Minnesota U.C.C. Govern?*

A choice of law provision selecting Minnesota state law was included in both the Agreement and the Credit Application and Agreement. (Pl.'s App. 17, Agreement ¶ 29 [14–3]; Pl.'s App. 21, Credit Application and Agreement ¶ 12 [14–3] ). The Court must determine whether the Minnesota Uniform Commercial Code ("U.C.C.") or Minnesota common law applies.

■ The Court must apply the U.C.C. if it governs the dispute because the U.C.C. exclusively governs the sale of goods. *Rector v. Elevator*, No. A07–0693, 2008 WL 3287910, at *2–3, 2008 Minn.App.Unpub. LEXIS 952, at *6–7 (Minn.Ct.App. Aug. 12, 2008) (citing *Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn.1990)). Only if the U.C.C. is inapplicable, may the Court consider the dispute under Minnesota common law.

■ Article 2 of the U.C.C. applies to the sale of goods. The contract at issue provides for the sale of weaned pigs. Minnesota Stat. § 336.2–105(1) defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale[,] ... includ[ing] the *unborn young of animals* and growing crops ...." (emphasis added). The Court has not been presented with any Minnesota Supreme Court precedent on whether weaned pigs are within this definition of goods. However, at least one Minnesota court has applied the U.C.C. to a contracts governing the sale of animals. *Mishek v. Mikkelson*, No. C2–88–2298, 1989 WL 49268, at *1, 1989 Minn.App. LEXIS 599,

1. Land O'Lakes' Motion for Summary Judgment does not request post-judgment interest.

at *2 (Minn.Ct.App. May 8, 1989) (applying the U.C.C. to the sale of a horse).[2]

■ The Minnesota Supreme Court has held that the Minnesota legislature adopted the U.C.C. in order to promote consistency between state laws. *State Bank of Young America v. Vidmar Iron Works, Inc.*, 292 N.W.2d 244, 249 n. 2 (Minn.1980). As such, the Minnesota statute should be interpreted consistently with other jurisdictions. *Id.* The Northern District of Iowa, interpreting the Iowa U.C.C, which includes the same definition of "goods," held that weaned pigs are included in the definition, and thus, such contracts are governed by the U.C.C. *Purina Mills, L.L.C. v. Less*, 295 F.Supp.2d 1017, 1031 (N.D.Iowa 2003).

This Court similarly holds that the sale of weaned pigs is included in the definition of "goods," and the Minnesota U.C.C. governs the dispute.

**B. Did the Minnesota U.C.C. Require Land O'Lakes to Mitigate its Damages?**

■ Jaeger admits that he did not pay for the goods he accepted. The issue is whether the Minnesota U.C.C. required Land O'Lakes to mitigate its damages after Jaeger had already accepted the weaned pigs. The answer is no. Under the Minnesota U.C.C., after the breaching party has accepted the goods, the non-breaching party has no duty to mitigate its losses by accepting the return of the goods or proactively repossessing the goods without permission. In other words, because Land O'Lakes delivered the weaned pigs to Jaeger and Jaeger accepted the pigs, Land O'Lakes was not obligated to do anything else in order to recover the purchase price.

Article 2 and Article 9 of the U.C.C. are implicated. Article 2 applies, as discussed above, because this was a contract for the sale of goods. Article 9 also applies because Land O'Lakes retained a security interest in the weaned pigs.

*1. Article 2*

The relevant subsection of Article 2 is § 336.2–709(1) Action for the Price. It states:

(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price

(a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and

(b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

Subsection (a) applies to goods that have already been accepted. In contrast, subsection (b) applies to goods that have not yet been accepted but merely are "goods identified to the contract." Here, the buyer, Jaeger, accepted the goods, so subsection (a) applies. It puts no additional requirements on the seller, Land O'Lakes, to recover the price of the goods after "the buyer fail[ed] to pay the price after it [came] due." *Id.* at § 336.2–709(1)(a). It is only if the goods had not been accepted that subsection (b) would apply and require the seller to mitigate damages by

---

**2.** Unpublished Minnesota appellate court decisions are not binding precedent. *Vlahos v. R & I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n. 3 (Minn.2004)(citing Minn.Stat. § 480A.08, 3(c) (2002); *Powell v. Anderson*, 660 N.W.2d 107, 123 (Minn.2003)). The Court cites this case for its persuasive value.

putting forth "reasonable effort to resell them ["the goods identified to the contract"] at a reasonable price" or [show that] the circumstances reasonably indicate that such effort will be unavailing." *Id.* at § 336.2–709(1)(b).

This interpretation is consistent with persuasive Minnesota case law and case law from other jurisdictions. In *Mishek v. Mikkelsen,* the Minnesota Court of Appeals quoted Minn.Stat. § 336.2–709(1)(a) (1986) and held that there was no duty under the Minnesota U.C.C. for the non-breaching party to mitigate damages by accepting the return of goods. 1989 WL 49268, at *1–2, 1989 Minn.App. LEXIS 599, at *2–4. Courts in New York, Texas, Pennsylvania, the Eighth Circuit, and Massachusetts have similarly interpreted Article 2, subsection 709(1) to hold that the non-breaching party has no duty to mitigate after the breaching party has accepted the goods. *See Siemens Energy & Automation, Inc. v. Coleman Elec. Supply Co., Inc.,* 46 F.Supp.2d 217, 218–19 (E.D.N.Y.1999); *Indus. Molded Plastic Prods., Inc. v. J. Gross & Son Inc.,* 263 Pa.Super. 515, 398 A.2d 695, 699 (Penn. 1979); *Unlaub Co., Inc. v. Sexton,* 568 F.2d 72, 76 & n. 3 (8th Cir.1977) (applying Arkansas law); *F & P Builders v. Lowe's of Texas, Inc.,* 786 S.W.2d 502, 503 (Tex. Ct.App.1990); *Equilease Corp. v. D'Annolfo,* 6 Mass.App.Ct. 919, 379 N.E.2d 1130, 1131 (1978). In conclusion, a plain statutory interpretation of Minn.Stat. § 2–709(1) that is supported by case law in Minnesota and across the country reveals a seller of accepted goods has no duty to mitigate its damages.

### 2. Article 9

The application of Article 9 does not change the outcome of the inquiry. Minn. Stat. § 336.9–601(a, c) states:

(a) Rights of secured party after default. After default, a secured party has the rights provided in this part and, except as otherwise provided in section 336.9–602, those provided by agreement of the parties. A secured party:

(1) may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure; and

. . . .

(c) Rights cumulative; simultaneous exercise. The rights under subsections (a) and (b) are cumulative and may be exercised simultaneously.

To put it simply, under Minn.Stat. § 336.9–601(a)(c), when a seller has a security interest, it may choose its remedy: a seller may, but is not required to, repossess the goods. Should he so choose, a seller may seek judgment for the purchase price. The court in *Mishek* applied Article 9 and held the same, stating "a party with a security interest in the collateral has the right to proceed to obtain a judgment without first going against the collateral." *Mishek,* 1989 WL 49268 at *1, 1989 Minn. App. LEXIS 599 at *3. In reaching that decision, *Mishek* found support in *Farmers Production Credit Assoc. v. Arena,* 145 Vt. 20, 481 A.2d 1064, 1066 (1984), which held the same. *Id.* at *1–2, 1989 Minn. App. LEXIS 599 at *3–4.

Applying both Article 2 and Article 9, Land O'Lakes had no duty to mitigate its damages by accepting the return of the weaned pigs, repossessing the pigs, or taking any further action after Jaeger accepted the weaned pigs.

### C. Does Jaeger's Affidavit Provide a Material Issue of Fact?

■ Jaeger's Appendix consists entirely of a personal affidavit asserting the following:

1. When I found out my check could not clear, the bank told Land O'Lakes

that it could have the pigs back. This was in order to try to reduce any damages in this case.

2. Land O'Lakes was also asked, alternatively, if they would retain ownership of the pigs and would be agreeable to leaving the pigs in the facilities they were already in. This meant that Land O'Lakes would pay for the feed and building rent until the pigs were market weight and then could sell them.

3. Land O'Lakes refused both of these offers that were made to try and reduce any damages to Land O'Lakes.

(Def.'s App. 1–4 [17–2]; Aff. of Jaeger 1 [17–2] ). Land O'Lakes challenges the competence of this evidence, specifically arguing that the evidence is inadmissible. (*See* Pl.'s Reply 1 [18] ).

 On a summary judgement motion, the Court may only consider evidence that would be admissible. *Firemen's Fund Insurance Co. v. Thien,* 8 F.3d 1307, 1310 (8th Cir.1993); Fed. R. Civ. Pro. 56(c)(4). Here, the affidavit plainly constitutes hearsay and personal knowledge is not shown. As such, the affidavit is inadmissible.

Even if the affidavit was admissible, the allegations are not material. The Court was not presented with any case law holding that a duty to mitigate arises under the U.C.C. if the breaching party offers up the goods for return to the non-breaching party.

Land O'Lakes had no duty to mitigate after Jaeger accepted the weaned pigs. Land O'Lakes was not required to reclaim and resell the weaned pigs. Land O'Lakes' rights under the contract became enforceable after Jaeger accepted the goods and failed to pay the purchase price. Land O'Lakes' Motion for Summary Judgment requesting the Court to award damages for the purchase price of the July Shipment ($93,112.73) minus the security deposit ($3,600) for a total of $89,512.73 is **granted.**

### D. Must Jaeger pay late charges at a rate of eighteen percent?

 The Credit Application and Agreement provides that Jaeger pay late charges on any overdue amounts at a rate of eighteen percent per year. (Pl.'s App. 2, Starke Aff. ¶ 6 [14–3]; Pl.'s App. 20, Ex. B Credit Application and Agreement § 3 [14–3] ). Jaeger's Answer raised the defense that the interest rate was unconscionable. (Answer 3 [7] ). In its Motion for Summary Judgment, Land O'Lakes argued against the unconscionability defense. Jaeger's Resistance to Summary Judgment is devoid of any mention of the interest rate. As a result, Jaeger waived the issue. The Minnesota Code governs but § 549.09(1) only dictates the interest rate for judgements that are not "otherwise provided by contract."

In accordance with the Minnesota statute and seeing no reason to do otherwise, the Court gives full effect to the Credit Application and Agreement and awards late fees at the contracted rate. Land O'Lakes' Motion for Summary Judgment for the award of late fees is **granted.** The Court first deducts the $3,600 security deposit from invoice number 87086984 bringing the original amount of $49,670.61 down to $46,070.61. On that amount, Jaeger shall pay a late charge of eighteen percent per year for every day it was past due. That results in a daily charge of $22.72 beginning August 4, 2012 through the date of judgment. Jaeger shall also pay late charges for the amount of $43,442.12, which was identified in invoice number 87092070. Jaeger shall pay $21.42 for every day it was past due beginning August 7, 2012 until the date judgment is entered.

### IV.

### CONCLUSION

The Court grants summary judgment in favor of plaintiff Land O'Lakes, requiring

defendant Jaeger to pay the purchase price as laid out in the invoices with the security deposit deducted from the earliest invoice, plus late charges of eighteen percent per year on each invoice balance through the date of judgment. The Clerk shall enter judgment as follows:

> IT IS ORDERED, ADJUDGED, AND DECREED that judgment is entered in favor of plaintiff Land O'Lakes Purina Feed LLC against defendant Luke Jaeger in the amount of $89, 512.73 plus late charges on the amount of $46,070.61 at a daily rate of $22.72 beginning August 4, 2012 through the date of judgment, and also late charges on the amount of $43,442.12 at a daily rate of $21.42 beginning August 7, 2012 until the date judgment is entered.

IT IS SO ORDERED.