OneWest Bank, N.A. v FMCDH Realty, Inc. (2018 NY Slip Op 06101)





OneWest Bank, N.A. v FMCDH Realty, Inc.


2018 NY Slip Op 06101


Decided on September 19, 2018


Appellate Division, Second Department


Chambers, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 19, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
CHERYL E. CHAMBERS
HECTOR D. LASALLE
VALERIE BRATHWAITE NELSON, JJ.


2016-00039
 (Index No. 8050/14)

[*1]OneWest Bank, N.A., etc., respondent, 
v
FMCDH Realty, Inc., appellant, et al., defendants.



APPEAL by the defendant FMCDH Realty, Inc., in an action to foreclose a mortgage, from an order of the Supreme Court (Daniel Palmieri, J.), entered in Nassau County on November 10, 2015. The order, insofar as appealed from, granted the plaintiff's motion for summary judgment on the complaint insofar as asserted against the defendant FMCDH Realty, Inc., and for an order of reference, and denied that branch of that defendant's cross motion which was for summary judgment dismissing the complaint insofar as asserted against it.



Miller, Rosado & Algios, LLP, Garden City, NY (Christopher Rosado and Neil A. Miller of counsel), and David Bolton, P.C., Garden City, NY, for appellant (one brief filed).
Hogan Lovells US LLP, New York, NY (Allison J. Schoenthal, Chava Brandriss, and Heather R. Gushue of counsel), for respondent.



CHAMBERS, J.


OPINION & ORDER
The primary issue presented on this appeal is whether a bank can establish its standing to foreclose on a reverse mortgage securing the repayment of a home equity line of credit by demonstrating that it was in possession of the original line of credit
agreement, indorsed in blank, at the time this action was commenced. In particular, we consider whether such a line of credit agreement constitutes a negotiable instrument as defined in section 3-104 of the Uniform Commercial Code.
I.
The essential facts are briefly summarized. On or about September 9, 2005, Maxine Minicozzi (hereinafter the borrower) entered into a reverse mortgage transaction with Financial Freedom Senior Funding Corporation (hereinafter Financial Freedom). The transaction was memorialized in two main documents: a Cash Account Adjustable Rate Reverse Mortgage Loan Account Disclosure Statement and Agreement (hereinafter the Cash Account Agreement), which allowed the borrower, from time to time, to obtain cash advances up to a limit of $806,152, and an Adjustable Rate Home Equity Conversion Deed of Trust (hereinafter the mortgage), which created a security interest on the borrower's home in Locust Valley to guarantee the payment of up to twice the stated advance limit under the Cash Account Agreement, i.e., a maximum principal sum of $1,612,304. Additional information regarding the terms and conditions of the Cash Account Agreement is presented in section III, infra.
The borrower died on May 31, 2010.
On February 18, 2011, Freedom Financial assigned the mortgage to Mortgage Electronic Registration Systems, Inc. The record also contains a second assignment of the mortgage, dated March 13, 2014, from an entity called Financial Freedom Acquisition, LLC, to the plaintiff.
Meanwhile, on June 9, 2011, the subject property was transferred by the executors of the borrower's estate to NMNT Realty Corp., which, in turn, transferred the property to the defendant FMCDH Realty, Inc. (hereinafter the defendant), by deed dated March 25, 2014.
In August 2014, the plaintiff commenced this action against several parties, including the defendant, to foreclose the mortgage. The defendant filed an answer asserting various affirmative defenses, including that the plaintiff lacked standing to bring this foreclosure action. The plaintiff thereafter moved for summary judgment on the complaint and an order of reference. The defendant opposed the motion and cross-moved, inter alia, for summary judgment dismissing the complaint insofar as asserted against it for lack of standing. By order entered November 10, 2015, the Supreme Court granted the plaintiff's motion and denied the cross motion.
II.
Generally, in the context of a motion for summary judgment in an action to foreclose a mortgage, " a plaintiff establishes its prima facie case through the production of the mortgage, the unpaid note, and evidence of default'" (Deutsche Bank Natl. Trust Co. v Brewton, 142 AD3d 683, 684, quoting Plaza Equities, LLC v Lamberti, 118 AD3d 688, 689; see U.S. Bank N.A. v Cruz, 147 AD3d 1103, 1103). When standing is at issue, the plaintiff must also prove its standing in order to be entitled to relief (see Deutsche Bank Natl. Trust Co. v Brewton, 142 AD3d at 684; Aurora Loan Servs., LLC v Taylor, 114 AD3d 627, 628, affd 25 NY3d 355; Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239, 242). A plaintiff has standing in a mortgage foreclosure action when it is the holder or assignee of the underlying note at the time the action is commenced (see Aurora Loan Servs., LLC v Taylor, 25 NY3d at 361; Deutsche Bank Natl. Trust Co. v Brewton, 142 AD3d at 684). "A holder' is the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession'" (Deutsche Bank Natl. Trust Co. v Brewton, 142 AD3d at 684, quoting UCC 1-201[b][21]; see Deutsche Bank Natl. Trust Co. v Webster, 142 AD3d 636, 638; Wells Fargo Bank, NA v Ostiguy, 127 AD3d 1375, 1376). Where the note has been indorsed in blank, the holder must establish its standing by demonstrating that the original note was physically in its possession at the time of the commencement of the action (see Deutsche Bank Natl. Trust Co. v Brewton, 142 AD3d at 685; U.S. Bank, N.A. v Collymore, 68 AD3d 752, 754).
Here, the document referred to by the plaintiff as the note is in fact the 14-page Cash Account Agreement. In support of its motion, the plaintiff, seeking to establish its standing, submitted the affidavit of its assistant secretary, who averred, based upon his review of the plaintiff's business records, that the plaintiff received the original Cash Account Agreement, indorsed in blank, on May 5, 2011, and had it in its possession at the time of the commencement of this action. The plaintiff also submitted proof of the borrower's death, and the default of her estate in repaying the underlying debt (see JPMorgan Chase Bank, N.A. v Weinberger, 142 AD3d 643, 645; Deutsche Bank Natl. Trust Co. v Naughton, 137 AD3d 1199, 1200; HSBC Bank USA, N.A. v Spitzer, 131 AD3d 1206, 1206-1207; Emigrant Mtge. Co., Inc. v Beckerman, 105 AD3d 895, 895).
In opposition, the defendant argued that, in a prior foreclosure action commenced in
the Supreme Court, Nassau County, by Financial Freedom Acquisition, LLC, the lender had attempted to establish its standing based on the physical delivery of the Cash Account Agreement, to which an undated allonge, indorsed in blank by an unidentified representative of Freedom Financial and referring specifically to the borrower and the address of the subject premises, was affixed. In support of the instant motion, by contrast, the Cash Account Agreement submitted by the plaintiff did not include the previous allonge, but instead bore a different, undated indorsement in blank signed by Judith Clements, a vice president of Freedom Financial, which referred neither to the subject premises nor to the name of the borrower.
The Supreme Court accepted the prima facie showing made by the plaintiff, disregarding the absence of the prior allonge relied upon by the plaintiff's predecessor in interest in the prior action, and accepting the new indorsement in blank by Judith Clements. Because the plaintiff is seeking to establish standing on the basis that it is a valid holder in due course of the Cash Account Agreement, this Court requested a postargument submission on the threshold question of whether the Cash Account Agreement falls within the definition of a negotiable instrument as [*2]contemplated by section 3-104 of the Uniform Commercial Code.
Upon our review of the record, including the additional postargument submissions received from both sides, we conclude that the Cash Account Agreement does not constitute a negotiable instrument within the meaning of UCC 3-104. Therefore, the plaintiff cannot establish its standing merely by demonstrating that it was in possession of the original Cash Account Agreement, indorsed in blank, at the time the instant action was commenced.
III.
In 1846, a negotiable instrument was famously compared, by Justice Gibson of the Supreme Court of Pennsylvania, to a "courier without luggage" (Overton v Tyler, 3 Pa 346, 347), in recognition of the fact that such instruments must be "framed in the fewest possible words, and those importing the most certain and precise contract" (id. at 347).
Negotiable instruments have changed considerably in the intervening 172 years. While they are no longer spare as they once were (see Grant Gilmore, Formalism and the Law of Negotiable Instruments, 13 Creighton L Rev 441, 453 [1979]), Justice Gibson's description has proved to be remarkably resilient—though it may be more accurate to describe the modern negotiable instrument as a courier with a personal item and one carry-on bag.
Specifically, to qualify as a negotiable instrument under the UCC, a document must "(a) be signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer" (UCC 3-104[1] [emphasis added]).
Further, as pertinent here, UCC 3-112 provides:
"(1) The negotiability of an instrument is not affected by
"(a) the omission of a statement of any consideration or of the place where the instrument is drawn or payable; or
"(b) a statement that collateral has been given to secure obligations either on the instrument or otherwise of an obligor on the instrument or that in the case of default on those obligations the holder may realize on or dispose of the collateral; or
"(c) a promise or power to maintain or protect collateral or to give additional collateral; or
"(d) a term authorizing a confession of judgment on the instrument if it is not paid when due; or
"(e) a term purporting to waive the benefit of any law intended for the advantage or protection of any obligor; or
"(f) a term in a draft providing that the payee by indorsing or cashing it acknowledges full satisfaction of an obligation of the drawer; or
"(g) a statement in a draft drawn in a set of parts (Section 3-801) to the effect that the order is effective only if no other part has been honored.
"(2) Nothing in this section shall validate any term which is otherwise illegal."
UCC 3-104(1)(b), when read in conjunction with UCC 3-112, covers the various promises, orders, obligations, or powers which, in addition to the maker's or drawer's unconditional promise of payment, may be included in a negotiable instrument.
Here, as correctly noted by the plaintiff, the Cash Account Agreement is signed by the borrower and contains an unconditional promise to pay. In addition to this, however, the Cash Account Agreement also contains provisions that go well beyond what is permitted under the UCC. Most significantly, the Cash Account Agreement creates an open-end (i.e., revolving) line of credit upon which the borrower could draw a maximum of $806,152. Since the initial advance in this case was only $366,152, the borrower potentially could have drawn down as much as $440,000 more from the lender. Consistent with these terms, the borrower promised to pay when due "all amounts advanced" under the Cash Account Agreement. Although the plaintiff contends that such an agreement constitutes a negotiable instrument, we have found no New York case [*3]directly on point. In other jurisdictions, however, similar line of credit agreements have been held to be distinct from an agreement to pay a sum certain (see Resolution Trust Corp. v Oaks Apts. Joint Venture, 966 F2d 995, 1001-1002 [5th Cir]; Heritage Bank v Bruha, 283 Neb 263, 269-270, 812 NW2d 260, 268; Yin v Society Natl. Bank Indiana, 665 NE2d 58, 62-63 [Ind Ct App]; Cadle Co. v Richardson, 597 So2d 1052, 1055-1056 [La Ct App]; Farmers Prod. Credit Assn. v Arena, 145 Vt 20, 22-23, 481 A2d 1064, 1065).
Beyond this, however, the Cash Account Agreement also provides for the periodic adjustment of the advance limit, and allows the lender, inter alia, to suspend, terminate, or reduce the borrower's right to obtain future advances under certain circumstances. Section 17.2 of the Cash Account Agreement specifically allows the lender to sell, transfer, or assign its rights thereunder to third parties, with the understanding that the purchaser, transferee, or assignee will have no obligation to cure any of the lender's failures to perform, and that the lender will continue to be obligated to the borrower under the Cash Account Agreement unless the sale, transfer, or assignment is made to a financially responsible person who unconditionally assumes all of the lender's obligations thereunder. Moreover, section 18 requires all disputes arising out of or relating to the Cash Account Agreement—other than an action to foreclose—to be submitted to binding arbitration. On its face, the Cash Account Agreement does much more than memorialize the borrower's unconditional promise to pay a sum of money. It creates a banking relationship between the lender and the borrower, provides terms and conditions under which the borrower may, from time to time, obtain additional cash advances from the lender, and even contains an arbitration clause. Although the Cash Account Agreement appears to have been signed only by the borrower, section 17.2 specifically acknowledges that it imposes obligations on both the borrower and the lender. The specific language of several provisions of the Cash Account Agreement, read in context of the agreement as a whole, provides compelling evidence that the Cash Account Agreement is not, and was never intended to be, a negotiable instrument (cf. General Motors Acceptance Corp. v Honest Air Conditioning & Heating, Inc., 933 So2d 34 [Fla Dist Ct App]).
Therefore, the plaintiff cannot establish its standing merely by showing that it possessed the original Cash Account Agreement, indorsed in blank, on the date this action was commenced, and the plaintiff's motion for summary judgment on the complaint should have been denied.
We agree with the Supreme Court's determination to deny that branch of the defendant's cross motion which was for summary judgment dismissing the complaint insofar as asserted against it, as the defendant failed to eliminate triable issues of fact as to whether the plaintiff had standing (see MLCFC 2007-9 Mixed Astoria, LLC v 36-02 35th Ave. Dev., LLC, 116 AD3d 745, 747; cf. Financial Freedom Acquisition, LLC v Griffin, 176 Conn App 314, 170 A3d 41).
The parties' remaining contentions either are without merit or need not be reached in light of our determination.
Accordingly, the order is modified, on the law, by deleting the provision thereof granting the plaintiff's motion for summary judgment on the complaint insofar as asserted against the defendant FMCOH Realty, Inc., and for an order of reference, and substituting therefor a provision denying the motion; as so modified, the order is affirmed insofar as appealed from.
MASTRO, J.P., LASALLE and BRATHWAITE NELSON, JJ., concur.
ORDERED that the order is modified, on the law, by deleting the provision thereof granting the plaintiff's motion for summary judgment on the complaint insofar as asserted against the defendant FMCDH Realty, Inc., and for an order of reference, and substituting therefor a provision denying the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.
ENTER:
Aprilanne Agostino
Clerk of the Court